## Kay *versus* Scates.

*Trust Estates, general and special.—Equitable and Legal Titles.—Executed Trusts.—Enlargement of Estates Tail.*

1. A mere dry trust will not be sustained when the person equitably entitled to any property takes absolutely the entire beneficial interest; and the trustee has no duty to perform, unless the trust be a special one intended to accomplish some object; as, to preserve contingent remainders, protect property for the sole and separate use of married women from the creditors of the *cestui que trust.*

2. The law in Pennsylvania strikes down many trusts that are in England considered valid, and treats them as executed, regarding the legal estate as vested in the *cestui que trust*, where the persons named as trustees have no duties to perform, which require the seisin, or possession, of the estate to be in them, and the persons for whose use the trust was created are *sui juris.*

3. A limitation in a will to one for life, with a power of appointment in favour of the issue of his body, and, in default of such appointment, to such issue, and if he die, leaving no issue of his body, then over, creates an estate tail in the first taker.

4. The words "leaving no issue of his body," in a devise of land, indicates an indefinite failure of issue.

5. The word "issue," in a will, is primarily a word of limitation. Where a testator devised one-third of his estate to each of his three children for life, with power of appointment in favour of the issue of his or her body, in default thereof, to said issue, and in default of any issue, to the heirs of the testator, directing the same to be held in trust by his executors, who were directed to sell and invest the property in real estate, and allow the children, from their income therefrom, such money for their support and education as they may think proper, and also, on their attaining the age of twenty-five, to pay them respectively, during their natural lives, in quarterly instalments, the income of the said real estate, for their respective benefit, it was *held*, that on the children's attaining respectively the age of twenty-five, the devise created a complete estate tail in each, clear of the trust, which, by the Act of 1855, is converted into an estate in fee simple.

6. A trust is not to be sustained because it is for the sole and separate use of a *feme sole*, who was unmarried when the will took effect, and there being, at that time, no marriage in immediate contemplation.

7. A trust is special, and will not be considered executed until the time at which the full beneficial enjoyment of the interest devised shall vest, which may be postponed until after the *cestui que trust* attains majority.

8. Although in Rush *v.* Lewis, and Kuhn *v.* Newman, the court refused to decree a conveyance from the nominal trustee, yet when the nominal trust beclouds the title and embarrasses the rights of alienation, a conveyance will be decreed in accordance with the practice of Courts of Chancery.

9. The cases of Kuhn *v.* Newman, 2 Casey 227, Rush *v.* Lewis, 9 Harris 72, Steacy *v.* Rice, 3 Casey 75, and Bush's Appeal, 9 Casey 85, affirmed.

THIS was a bill in equity brought by J. Alfred Kay, William H. Furness, Jr., and Hannah, his wife, formerly Hannah Kay, and Mary Kay, against Charles W. Scates and Edwin R. Cope, executors under the will of James Kay, deceased, who died April 22d 1856, and set sforth that the testator devised one-third of his

[Kay *v.* Scates.]

estate (with the additional bequest of $5000 absolutely to J. Alfred Kay) to each of the complainants for life, with a power of appointment in favour of the issue of their bodies, and in default of such appointment, then to such issue, and in default of any issue, to the testator's heirs at law by consanguinity, directing the same to be held in trust by the defendants.

In regard to Hannah Furness and Mary Kay, the object of the trust purported to be to prevent their interest in the estate from becoming liable for any debts or engagements, or subject to the control of any husband they might have or take; and it was directed in the case of each of the complainants that he or she should be entitled to the income of the estate so devised on attaining twenty-six years of age. That the said J. Alfred Kay is twenty-five years of age, Hannah Furness is twenty-two years of age, Mary Kay is twenty-one years of age.

That, in pursuance of the directions imposed by the will to sell and invest, the defendants have invested moneys of the estate to a large amount in certain real estate, and have caused the same to be conveyed to them as trustees; and the prayer of the bill is for a decree to compel the defendants to convey the legal title to the real estate aforesaid to the complainants in equal portions.

The answer admits the facts set forth in said bill, and states that the respondents have not yet completely settled the estate, that they have filed an account which has been duly confirmed, and proceeds to show the manner and amount of their investments. The respondents also state that they are advised that the complainants have but a life estate, with power of appointment, and that the trust should be enforced, and the intention of the testator sustained, and hence they pray that the complainants' bill be dismissed.

The case was submitted upon bill and answer, at Nisi Prius, to Mr. Justice STRONG, who made the following decree:—

"And now, to wit, January 10th 1860, it is ordered that the prayer of the complainants be denied, and that their bill be dismissed."

The complainants thereupon asked a certificate to the court in banc, and assigned the above decree as error.

*Hopper*, for complainants.—The trust contained in the will is not a special trust, which the statute of uses does not affect, but a trust general, upon which the statute executes the possession.

Where the entire beneficial interest is given to the *cestui que trust*, in Pennsylvania the trust will not be considered a trust special, unless there is some legal disability in the *cestui que trust*.

The trust must support a lawful interest beyond that held and

[Kay v. Scates.]

enjoyed by the *cestui que trust*, and, as a consequence, the trustee must have such a duty to perform as can only be done by the legal seisin remaining in him.

The entire beneficial interest having been given to J. Alfred Kay, the trust in his favour, after his attaining the age of twenty-five years, becomes a legal interest, there being no disability requiring protection: Smith v. Starr, 3 Whar. 62; Hammersly v. Smith, 4 Whar. 126; Nash v. Nash, 3 Barn. & Adol. 839; Kuhn v. Newman, 2 Casey 227; Bush's Appeal, 9 Casey 85. The attempted limitation for life is an estate of the same nature as that limited over; they are both legal and will unite by the rule in Shelly's Case, 2 Jarman 244; Pratt v. McCawley, 8 Harris 264; Hileman v. Bonslaugh, 1 Harris 344. The limitation over is to *issue of the body*, which, in their first and ordinary meaning, are words of limitation: 2 Jarman 235; Middleworth v. Collins, 1 Phil. Rep. 139; Haines v. Witmer, 2 Yates 400; Eichelberger v. Barnitz, 9 Watts 450; Clark v. Baker, 3 S. & R. 477. The case in 1 Co. 66, Archer's Case, is not applicable; there the issue were, by other words, made the root of a new inheritance. The power of appointment will not defeat the application of the rule in Shelly's Case; 2 Crabbe on Real Estate 34; King v. Melling, 1 Ven. 214; Carter v. McMichael, 10 S. & R. 429.

The cases of Reese v. Steel, 2 Sim. 233; Robinson v. Robinson, 1 Burr. 38; and Paxon v. Lefferts, 3 Rawle 59; contain the principle applicable to the case here, and decide that the estate of the devisees is an estate in fee simple: Clark v. Baker, 3 S. & R. 470, is to the same effect.

The estate tail is, by the Act of 1855, enlarged to an estate in fee simple.

If the devises were taken to be estates for the life of the children only, with remainder to the issue as purchasers, which, in the present case, would be contingent remainders, the children having also the fee simple title by descent, they could by deed make conveyances in fee simple, in which case the two estates would not open to let in the contingent remainders: Stewart v. Kenower, 7 W. & S. 288; Bennett v. Morris, 5 Rawle 9; 2 Jarman 245, 246; Nash v. Nash, before cited. The reasoning is alike applicable to each of the shares.

Nagle's Appeal, 9 Casey 89, is an authority that a deed from the trustees would be proper.

*Pancoast*, for respondents.—I. It is clearly the intention of the testator that complainant should only take a life estate. The words superadded are words of purchase, and not words of limitation; and, by the words of the will, "any the issue of his body," an indefinite succession of lineal descendants is not meant.

1 WR.—3

[Kay *v.* Scates.]

The word "issue" is ambiguous in a will, and does not imply in itself the idea of inheriting : Earl of Oxford *v.* Churchill, 3 Ves. & Bea. 67.   There is a less degree of presumption against construing the word "issue," than the words "heir of the body," to be words of purchase : Smith on Ex. Interests, § 525.

The words "any the issue of his body," are first used by the testator to describe those among whom the donee has the power to appoint.   They must be held here to describe a class among whom the appointment is to be made, and must be living in the lifetime of the donee : Sug. on Powers 475 ; Hockey *v.* Mawley, 1 Ves. Jr. 143, and note 4 to p. 152 ; Paul *v.* Compton, 8 Ves. 380.   The same words are used to describe those to take in default of appointment, and they must be taken to have the same meaning, there being nothing in the will from which a different meaning can be inferred : 2 Jar. on Wills 527.

Besides, this is the most simple and natural meaning.   If the devise was on an indefinite failure of issue, it must equally limit the estate to be taken under it, as in default of appointment it involves the improbable construction that the testator intended the real estate to be appointed to any of the issue, their heirs and assigns, with the condition that they should hold so long as any of the issue of the donee should be in existence. If he did not intend this, then he did not mean an indefinite failure of issue, and the proper construction is that complainants take life estates, with powers of appointment to any of their issue living at their deaths, in fee, who, in default of appointment, take among them in fee, and if there be no issue living at the death of donee, then over : Smith on Ex. Dev. §§ 527, 530 ; Hockley *v.* Mawbey, 3 B. C. R. 82 (Perkins' Ed. 73, note *a*); Suddington *v.* Kime, 1 Ld. Raym. 203 ; Abbot *et al. v.* Jenkins, 10 S. & R. 298 ; Dunwoodie *v.* Reid, 3 S. & R. 470 ; Greenwood *v.* Rothwell, 5 Mann. & Gr. 628 ; 5 S. & R. 99 ; Findley *v.* Riddle, 3 Binn. 139.

II. The testator directs the defendants to convert the whole of his estate to realty, to keep the same sufficiently insured, receive the rents, and pay over to the complainants what they, the trustees, deem sufficient for support and education, until they are twenty-five ; all of which cannot be done unless the legal estate is in them.   There is a distinction between trusts *to* receive and pay over, and trusts to permit the *cestui que trust* to receive—the first are not executed : Symons *v.* Turner, Eq. Ca. Abr. 383 ; White *v.* Parker, 1 Bing. New Cases 573.   In Rush *v.* Lewis, 21 St. Rep. 72, the trust was to receive and pay the income to the daughters not subject to the debts of any husband they might *thereafter* marry, and Black, C. J., held that if it had not been made the duty of the trustees to receive and pay, they would not have had the estate.

[Kay v. Scates.]

The direction that the receipts of the *cestuis que trust* alone shall be the only sufficient discharge, shows an intention to secure for their exclusive enjoyment the income.

The intention is a legal one; and to effectuate it, the trust will be protected: Fisher *v.* Taylor, 2 Rawle 33; Holdship *v.* Patterson, 7 Watts 551; Vaux *v.* Parke, 7 W. & S. 19; Ashurst *v.* Given, 5 W. & S. 328; Sylvester *v.* Wilson, 2 Term R. 444.

The opinion of the court was delivered, January 7th 1861, by

STRONG, J.—If the estate devised for life to J. Alfred Kay, and the other complainants, be only equitable, while the remainder given to the issue of the bodies of each is legal, the prayer of the bill must be denied. There is, then, no ground for the application of the rule in Shelly's Case. The first question, therefore, presented by the record is whether the legal estate is vested in the defendants who are the trustees named in the will of the testator, or whether it has passed to the beneficial devisees. The will directs that the trustees shall invest the property given in real estate, in their own names, which has been done. It directs that the property shall be kept perpetually and sufficiently insured, and that, on the attainment of the age of twenty-five years by James Alfred Kay, the trustees shall pay to him, during his life, in quarterly instalments, the income of the said real estate purchased for his benefit; and it declares that his receipt, and his receipt alone, shall be their only sufficient discharge therefor. James Alfred Kay, one of the complainants, has attained the age of twenty-five. As to him, the discretion given to the defendants to allow to each of the complainants, from his or her income, such money for his or her support and education as they may think proper and expedient, and the direction to invest the surplus for his benefit, have expired. The duty of the trustees now, therefore, is to pay over, quarterly, the whole income, taking his receipt. Have they, then, any duty imposed upon them which requires that they should continue invested with the legal estate? If the case were to be decided according to the doctrine of the English courts, it cannot be doubted that they have. There the rule appears to be well established, that when there is a gift of real estate to trustee, with a direction to convey, or to pay the rents and profits to certain persons, or to receive the rents and apply them for the maintenance of an individual during his life, or to pay an annuity out of the rents during his life, the seisin or possession of the legal estate is requisite for the due performance of the duty imposed upon the trustees, and consequently that the persons to whom the use is subsequently given take only an equitable estate. Such interests are not held regarded as mere dry trusts, to be disregarded, and considered

[Kay *v.* Scates.]

executed in the person to whom the beneficial interest is given. To sustain a dry trust there must have been some special lawful trust expressed, but not so where the trustee has active duties to perform. From the case of Lord Say and Seal *v.* Jones, 1 Eq. Ca. Ab. 383, to the present time, it has been held that there is a distinction between a devise to trustees to pay the rents, issues, and profits, and a devise to them to permit the beneficial donee to receive such rents, or generally in trust for the beneficial donee. Hill, in his treatise on Trustees, has collected many cases in which the doctrine has been asserted, p. 232. Jarman also has collected a large number, from which he deduces the rule that where property is devised to A. and his heirs, the question whether A. does or does not take the legal estate depends chiefly on the fact whether the testator has imposed upon him any duty or trust, the performance of which requires that the estate should be vested in him; and it has been held, and is still held, that though nothing be required of the trustee but to pay over the rents, that is sufficient. Thus in Doe, *ex de.* Leicester, 2 Taunt. 109, a distinction was drawn between a devise to a trustee to pay over the rents, and a devise to permit the *cestui que trust* to receive them: the legal estate in the former case being held to be in the trustee, and in the latter in the beneficial owner. In 6 Ad. & Ellis, 206, Doe, *ex de.* Greatrex *et al.*, *v.* Homfray, there was a devise to the use, that certain persons named should and might take and receive the rents, issues, and profits, and pay the same to the testator's son for and during his natural life, and from and after the decease of the son the testator devised the premises to the heirs of the body of the son, with remainders over in default of such heirs of the body. It was held that a legal estate passed to the persons empowered to receive and pay the rents during the life of the son. Lord Denman said the case fell within the numerous class where it has been held that a devise to trustees to pay over the rents vests the estate in such trustees. That the devise is not directly to the trustees, but to the use and intent that they may receive, &c., appears *to* us to make no difference, nor the absence of a devise to trustees to preserve contingent remainders. He added, "it was observed that the will required nothing to be done by the trustees, and it is true nothing is to be done but paying; but this has been held to be sufficient, and must be taken to be the present law." And even where a trust to permit and suffer the testator's wife to receive the rents during her widowhood, was followed by a direction that her receipts, with the approbation of any one of the trustees, should be good and valid, it was held that the legal estate was vested in the trustees, and this because the testator contemplated that they should approve the receipts given by the *cestui que trust.*

[Kay *v.* Scates.]

Neither in England nor in this state, will a mere dry trust be sustained when the person equitably entitled to any property takes absolutely the entire beneficial interest, and the trustee has no duty to perform, unless it be a special trust, intended to accomplish some object, such as to preserve contingent remainders, or to protect property for the sole and separate use of a married woman, or from the creditors of the *cestui que trust.* But some recent Pennsylvania cases have held that our law strikes down trusts which are valid in England, treats them as executed, and regards the legal estate as vested in the *cestui que trust.* Of this class, Kuhn *v.* Newman, 2 Casey 227, is the leading one, and perhaps the first. Rush *v.* Lewis, 9 Harris 72, and Steacy *v.* Rice, 3 Casey 75, are in perfect harmony with the decisions in the mother country. In the first of these there was a devise to executors in trust to pay the rents, issues, and profits, to the testator's daughter, during her life, for her sole and separate use, and after her death for the use of such persons as she might appoint by will, and in default of appointment, to and for the use of her children. After the death of the daughter, the legal estate was held to be vested in her appointee. Here, after the termination of the special trust to pay the rents to the sole and separate use of the married daughter, there were no duties for the trustees to perform, and the purposes of the trust were satisfied. Then the law struck it down. Indeed it was intimated that the direction to pay the rents, issues, and profits, to the tenant for life, alone sustained the legal title in the trustees till her death, though the intimation overlooked the fact that there was a special purpose in the creation of the trust, to wit, the preservation of the income for the separate use of a married woman. Steacy *v.* Rice was very similar. There also the legal estate was not declared vested in the *cestui que trust* until the special trust had terminated, and the trustees had ceased to have any active duties to perform. But Kuhn *v.* Newman advances on the doctrine of these cases. There the trust was to hold for the separate use of a *feme covert* to permit her to take, receive, enjoy, expend, and dispose of the rents, issues, and profits, during her natural life, and after her death in trust to educate, maintain, and support her children until their arrival respectively at the age of twenty-one years, then in trust for the sole and separate use of such children, subject as to the income thereof to their own free and absolute disposal. Until the children arrived at the age of twenty-one, the trustees were required to educate, maintain, and support them; after that time they had no duties to perform; and even in England, the legal estate would then have vested in them. But the court held that it so vested, even before their arrival at the age of twenty-one,

notwithstanding the duty imposed upon the trustees. They declared that "our common law takes a higher position than English common law or English equity; that in relation to titles to lands, it does so by adopting the forms of both as legal forms, and treating all complete equitable titles as complete legal ones, where the persons named as trustees have no duty to perform that requires the seisin and possession to be in them; and then our common law enforces the trust as a legal estate," "even those uses that were not executed by the statute (of uses), for example, those that are limited against the rules of the common law; 1 Rep. 129 (b); a use limited upon a use, a use of chattels real, and a trust to receive rents and pay them to another; 2 Black. Com. 335; all these are executed by one principle." The case in effect denies the possibility of creating in this state, any other than technically special trusts. Thus it is said that trusts properly so called are uses that our law does not execute as legal estates, because of circumstances that take them out of the ordinary course of legal administration, and place them under a special guardianship of the court; but this is not generally allowed in favour of individual persons who have full competency to act in their own right. A fee simple in them is treated as such, whether assured in a legal or equitable form. In other words, persons who are *sui juris* men or women, must be satisfied with the ordinary remedies and protection of the law. And finally, it is held that a trust to educate and maintain children until they arrive at age, does not furnish a legitimate reason for preserving the trust from being executed in the beneficiary. The case was decided by an unanimous court. I understand it as denying the possible existence of any such trust as the testator in this case has attempted to set up in favour of the complainants. It declares them to be the holders of the legal estate; Bush's Appeal, 9 Casey 85, substantially reasserts the doctrine of Kuhn *v.* Newman. There, the *cestui que trust* was a *feme covert*, it is true, but the gift was not declared to be for her separate use. The trustee was ordered to receive the legacy, put it at interest, and pay the interest yearly to the testator's daughter during her natural life, and the principal, after her death, to her heirs, share and share alike, in equal parts. The trustee's duty, it will be observed, was to invest and pay the interest yearly during life. This court held that no trust existed after the death of her husband. The actual duties imposed upon the trustee were not sufficient to keep alive the trust, and it was therefore treated as executed in the *cestui que trust*. Kuhn *v.* Newman and Bush's Appeal govern the present case. The complainants are all *sui juris*. The duties imposed upon the respondents as trustees, are neither greater, no more require the seisin to

remain in them, than the duties of the trustees in those cases. Nor is the nature of the duties different. The trustees are to pay the income quarterly, and are to be discharged only by the receipts of the complainants. The entire beneficial interest is in the *cestui que trusts*. It is true, that two of the complainants have not yet arrived at the age of twenty-five, and until then the testator has postponed their full enjoyment of the income of the property. Until then a discretion is given to the trustees to determine what amount they shall receive. The full right to a present beneficial enjoyment is not yet theirs. But when they shall reach that age, they will stand in the same position with their brother, the other complainant. It need not be said that a trust is to be sustained because the gift is for their sole and separate use. They were unmarried when the will took effect, and no marriage was immediately contemplated: Smith v. Starr, 3 Whar. 67. But the right of the respondents to control the amount which they may enjoy until they reach the age of twenty-five, will postpone the execution of the trust until that time. The trust could not be discharged under the direction of the Orphans' Court after they arrive at majority, and therefore there is a reason for its continuance, that did not exist in Kuhn v. Newman. But J. Alfred Kay has attained to the age of twenty-five, when, by the directions of the will, the whole of the income of the property devised is to be paid to him. Under the rule asserted in Kuhn v. Newman and Bush's Appeal, his has therefore become a legal estate, as is the remainder limited after his decease. Considering them both, the particular estate for life, and the remainder, as legal, the limitations of the will are to J. Alfred Kay for life, with a power of appointment among any of the issue of his body, and in default of appointment, to such issue; and if he die leaving no issue of his body, then over. That this created an estate tail in the first taker, admits of no doubt. The word issue, in a will, is primarily a word of limitation. When used by a testator, the legal presumption is that he intended a limitation, not that the remainder never should take as purchasers. Nor is there anything in this will that indicates an intention of the testator that the word issue should have any other than its primary signification. There are not even words of distribution among the issue. Nor are there any words of superadded limitation. And there is a gift over if the tenant for life die, leaving no issue of his body. That this means an indefinite failure of issue, need not be argued. The subject of the gift is money laid out in land. It is therefore real estate, and in such cases " die without issue," or " in default of issue," or " for want of issue," or " on failure of issue," or " die without leaving issue," import the same thing,

[Kay *v.* Scates.]

to wit, an indefinite failure of issue. An estate tail would therefore be implied from the devise over, even if there were no gift of a remainder directly to the issue of a class. And as estates tail are by our Act of 1855 converted into estates in fee simple, it follows that J. Alfred Kay is the legal owner in fee simple of one-third of the property, and that the other complainants will be similar owners when they shall respectively attain the age of twenty-five years.

No decree is at the present asked in favour of any other complainant than J. Alfred Kay, and we shall therefore only decree a conveyance to him. In Rush *v.* Lewis, 9 Harris 72, and in Kuhn *v.* Newman, this court refused to decree a conveyance from the nominal trustee, in cases where the legal estate was held to be executed in the *cestui que trust* by force of law, on the ground that there was no necessity for it. Yet the nominal trust beclouds the title, and embarrasses the rights of alienation, which belong to the true owner. We think it better, therefore, to decree a conveyance, and such is the practice of courts of chancery, where the purposes of a trust once existing have been accomplished.

Decree reversed.