## Blair v. Pennsylvania Company, etc., et al.

E. *Spencer Miller*, for plaintiff.

*John T. Murphy, Jr., Ralph B. Umsted, Ira Jewell Williams* and *John R. Umsted*, for defendants.

HEILIGMAN, J., January 12, 1935.—Plaintiff filed this bill in equity to compel the partition of real estate consisting of a piece of ground with a dwelling thereon erected situated at 1741 S. Fifty-sixth Street, Philadelphia. The bill alleges that the Continental-Equitable Title & Trust Company held a mortgage of $3,500 on the property in the capacity of trustee for sundry trusts; that the sundry trusts were four estates in which the company was the fiduciary or cofiduciary, including plaintiff's estate, of which the company was guardian; that the mortgage was foreclosed, and title was taken by the company in the same capacity as the mortgage was held, namely, as trustee for sundry trusts. Plaintiff avers that by virtue of the foreclosure the trust upon which the mortgage was held by the company became executed by operation of law and the legal title to the property became vested in the four cestuis que trustent as tenants in common, and since plaintiff has become of age, instead of vesting in the company as guardian of his estate, title has vested in plaintiff. On these facts plaintiff claims to be entitled to partition of said real estate.

Answers that were substantially alike were filed by all defendants. The substance of the answers is that the trust for sundry trusts did not become executed by operation of law because there remained active duties for the trustee to perform, namely, preservation of the property, liquidation thereof, and pro rata distribution in accordance with the provisions of the Act of May 5, 1927, P. L. 777, so that said trust still continues. New matter

was introduced by the defendants to the effect that the company has applied to the Court of Common Pleas No. 5 for the appointment of a substituted trustee to continue the management of the property for the benefit of all the cestuis que trustent.

The cause was submitted and argued on the bill and the answers of the defendants. The averments of the answers, except the conclusions of law therein contained, must, therefore, be taken as true. . . .

## Discussion

There are, therefore, two problems to be considered here: (1) Whether the Act of May 5, 1927, P. L. 777, is applicable; and (2) whether, if this act is not applicable, the trust is nevertheless still active.

The Act of 1927 provides as follows:

"That said companies may assign to their various trust estates participation in a general trust fund of mortgages upon real estate securing bonds or notes, in which case it shall be a sufficient compliance with the provisions of this section for the company to designate clearly on its records the bonds or notes and mortgages composing such general trust fund, the names of the trust estates participating therein, and the amounts of the respective participations; and in such case no estate so participating shall be deemed to have individual ownership in any bond or note and mortgage in such fund, and the company shall have the right at any time to repurchase at market value but not less than face value any such bonds or notes and mortgages from such fund, with the right to substitute therefor other bonds or notes and mortgages."

It is clear that the trust company intended this act to apply to the present trust as every provision in the act was carefully carried out and followed. However, inasmuch as the act refers only to "a general trust fund of mortgages" and makes no mention of a single mortgage, it is argued by the plaintiff that the statute is inapplicable to this case. What little interpretation there

has been of this legislation has not been entirely consistent. In Trust Companies' Investments, 9 D. & C. 335, Deputy Attorney General Wagner, in commenting on the act, states:

"It was intended to cover only the case in which a trust company has one large mortgage in which it is desired that two or more trust estates shall participate, or in which it has a large number of small mortgages in which it is desired that a limited number of trust estates shall participate, all of the mortgages being held in one fund."

On the other hand, Lamberton, J., in In re Manayunk Trust Co. (No. 2), 21 D. & C. 405, is of the opinion that this legislation had two functions to perform: First, to permit small amounts in estates to be invested in mortgages; and, second, to spread the risk of loss over several mortgages. He states at page 409:

"The purpose of the Act of 1925 was to permit investment of odd amounts in mortgage securities, and at the same time to spread the risk of unwise selection by giving even a small estate an opportunity to own an interest in a number of mortgages."

We agree that the act can serve two purposes but we do not agree that both purposes must be served in every case. The primary purpose appears to have been to permit small amounts in estates to be invested in mortgage pools, and while the effect of this is to spread the risk of loss in the ordinary type of mortgage pool, we do not feel that this result is mandatory. Both the trust company and the estates are benefited by this legislation and we see no reason for denying these benefits to the case where only one mortgage is involved. Having found that this trust comes under the provisions of the act, it follows that there is still an active trust, it being the duty of the trustee to liquidate the property. One of the purposes of the act was to segregate control of the mortgage from the beneficiaries and impose on the trustee the duty to protect the former's investment. The act specifically

states that the cestuis que trustent shall have no individual ownership in the bond and mortgage and it necessarily follows that on foreclosure this separation of legal and beneficial interest continues until the property has been liquidated. To hold that the trust ceases on the foreclosure of the mortgage would be to defeat the purposes of the act which gives the trustee the entire control in the handling of this particular investment. The act, in effect, authorizes the creation of a special trust which cannot be held executed until its purposes are accomplished. See Kay v. Scates, 37 Pa. 31.

However, even in the event that the Act of 1927 is regarded as ineffective here, there is authority for the proposition that there is still an active trust, regardless of foreclosure. The defendant argues that the property in the hands of the trustee is personalty, having been acquired by foreclosure of a mortgage previously held by the trustee for the beneficiaries, citing Fell's Estate, 14 Phila. 248. This case and subsequent cases have ruled that when an executor forecloses on a mortgage owned by his decedent, this property, for purposes of distribution, is held by the executor as personalty under the legal fiction of equitable conversion. Therefore, argues the defendant, there cannot be a partition of real estate here because the trustee does not hold realty. The difficulty with this argument is that the doctrine of equitable conversion is applied in order to determine who are the distributees in a given case, and, as there is a duty to pay over to these various distributees, an active trust always exists. But here the whole question is whether any such active duties do exist and the argument is consequently of no effect as it merely begs the question to be determined, i. e., whether the trust is active or not. However, there is authority for the proposition that on foreclosure of a mortgage by a trustee the mere act of foreclosure does not terminate the trustee's duties and execute the trust. In Pittsburg Wagon Works' Estate, 204 Pa. 432, a joint stock association was formed for the purpose of

purchasing a certain mortgage. The title of the mortgage was transferred to an individual in trust for the association, the bylaws of the company providing that the interest of each member was to be determined by the number of shares which he held. On default the mortgage was foreclosed. The court held that the interest of a stockholder was personalty and not realty and therefore not subject to levy and sale as real estate. It necessarily follows from this result that on foreclosure the trust was not executed, for if it had been executed then all the stockholders would have become tenants in common and the levy would have been valid. Applying this decision to the case at bar it is clear that the trust here is not a dry trust, it still being the duty of the trustee to administer and take care of the property for the benefit of all the estates concerned. To permit partition here would be to force an immediate sale of the premises and thus jeopardize the interest of all the beneficiaries. Although no specific duties are set forth in the declaration of trust, it may easily be implied that the beneficiaries gave the trustee the power to liquidate the security for the best interest of all. This in itself, of course, is sufficient to prevent the execution of the trust. Hence, this bill for partition has been improperly brought and must be dismissed.

Upon the facts as found and the foregoing discussion, the court bases the following

### Conclusions of law

1. That by reason of the provisions of the Act of May 5, 1927, P. L. 777, and by reason of the active duties imposed upon the trustee, the real estate acquired by the trustee by foreclosure as aforesaid is held by the Continental-Equitable Title & Trust Company upon an active trust.

2. That because plaintiff is a cestui que trust under an active trust, his proportionate share of the corpus thereof cannot be presently distributed to him, through partition

proceedings or otherwise, without the joinder and consent of all parties in interest.

3. That the bill praying for the partition of the real estate presently composing the corpus of said trust and the purparts thereof awarded free and clear of said trust should be dismissed.

4. That the plaintiff should bear the costs.

### Decree nisi

And now, January 12, 1935, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows: (1) That the bill be dismissed; (2) that the plaintiff pay the costs.

The prothonotary will enter a decree nisi in the terms above set forth, and will notify counsel thereof and of the filing of these findings and conclusions; and further, that if exceptions are not filed thereto within 10 days from the receipt of said notice a decree absolute in the sense of the decree nisi will be entered.