## Matlack *versus* Roberts.

1. "I give and devise to my sons all the residue of my estate real and personal. * * * And in case of the death of either of my children unmarried or without issue, then I do order that the share of said child or children so dying, may be divided equally among my surviving daughters or their heirs," created an estate tail in the sons.

2. The sale of the land by the sheriff for a debt of the testator vested a title in the purchaser discharged of the devise, and substituted the proceeds for the land.

3. The provision of section 33 of Act of February 24th 1834, directing the surplus proceeds of a sale on execution to be paid to the executor, is intended as a rule to govern the executor in making the distribution.

4. The devisee was not a tenant for life required to give security under the 49th section of the Act of 1834, to protect the remainders or contingent interests.

5. He did not fall within the rule in Duvall's Appeal, 2 Wright 121, to protect the estate over after a devise in fee *on condition:* an estate tail is not on condition.

6. The conversion of the estate by the judicial sale did what the devisee might have done to bar the tail according to the statute, and the conversion put the means of executing it into his own hands.

7. The disposition of the money was at his option and a duty to pay cannot arise out of an option, without its exercise in favor of the party claiming payment.

8. The policy of the law does not favor inheritable interests in chattels, or their being limited over to wait an indefinite failure of issue.

January 23d 1867. Before Woodward, C. J., Thompson, Read and Agnew, JJ. Strong, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county.*

This was an action of assumpsit, brought November 29th 1864, by Albert Matlack against Edwin Roberts, executor, &c., of John Roberts, deceased.

The circumstances on which this suit was founded are the following :—

William Roberts, by his will, proved May 4th 1841, devised his land to his two sons, Joseph and John, charged with legacies to his daughters, and added this clause :—"And in case of the death of either of my children unmarried or without issue, then I do order that the share of said child or children so dying, may be divided equally among my surviving daughters or their heirs."

William Roberts left two sons, the above devisees, and four

[Matlack *v.* Roberts.]

daughters, Martha Matlack, the mother of the plaintiff, being one.

In August 1863 the real estate of the testator was sold by the sheriff, on a judgment for a debt due by him in his lifetime. The proceeds of sale were brought into court and distributed by auditors, first to pay the debts of the testator, then the legacies charged on the land by the will; the balance of Joseph's share was absorbed by his debts, and the balance of John's share, amounting to $5885.25, the auditors reported was "due and payable to the said John Roberts as devisee under the will of William Roberts, deceased." The report was confirmed February 9th 1844, and this sum was received by John in about four months afterwards.

Martha Matlack subsequently died, leaving seven children, of whom the plaintiff is one.

John Roberts has died unmarried and without issue, having by his will given all his estate to Edwin Roberts, his nephew, and made him executor of his will.

In a special count of his declaration the plaintiff averred that the devise was to John Roberts in fee tail with remainder to the daughters of the testator, and that he received the balance of the proceeds after the sheriff's sale, "as devisee of the land aforesaid, to have the same estate and interest therein as he had in the land, and for the use and benefit of those in remainder, whereby, by reason of the premises the daughters of the said William Roberts and their heirs, upon the death of the said John Roberts, became entitled to have and receive the said sum of $5883," and that the plaintiff was entitled to a portion of his mother's share. Under the charge of the court the jury found for the plaintiff for $241.97, reserving the defendant's point that "under the law and the evidence the verdict must be for the defendant."

The court (Butler, P. J.) entered judgment for the defendant on the reserved point, notwithstanding the verdict.

This was assigned for error.

*W. Townsend,* for plaintiff in error.—An estate tail cannot be barred by a sheriff's sale: Sharp *v.* Pettit, 4 Yeates 413; Elliott *v.* Pearsoll, 8 W. & S. 40. The character of John's estate affords the rule of distribution of the proceeds of the land: Act of February 24th 1834, § 33, Purd. 288, pl. 99, Pamph. L. 79; Morrison's Case, 9 W. & S. 116; Clepper *v.* Levengood, 5 Watts 113. John did not exercise his option to bar the entail. His interest was not a perpetuity: 1 Jarm. 253; Act of February 24th 1834, § 49, Purd. 303, pl. 49, Pamph. L. 82. This provision applies to money substituted for land: Duval's Appeal, 2 Wright 121.

John's estate was an entail: Harris *v.* Witmer, 2 Yeates 400;

[Matlack v. Roberts.]

Clark v. Baker, 3 S. & R. 470; Eichelberger v. Barnitz, 9 Watts 447; Criley v. Chamberlain, 6 Casey 161; Vaughan v. Dickey, 8 Harris 509.

*W. Darlington*, for defendant in error.—John took a fee. "Or" must be construed "and:" Hauer v. Sheetz, 2 Binn. 532. The devise imports a failure of issue at John's death, and therefore definite: 2 Powell on Devises; Griffith v. Woodward, 1 Yeates 316; Eichelberger v. Barnitz, 9 Watts 430; Langley v. Heald, 7 W. & S. 98; Eby v. Eby, 5 Barr 463; Jessup v. Smuck, 4 Harris 327. The sale by the sheriff divested the entail: Gause v. Wiley, 4 S. & R. 509.

*W. Townsend*, for plaintiff in error, in reply.

The opinion of the court was delivered, January 28th 1867, by

Agnew, J.—William Roberts devised his real estate to his sons, Joseph and John, and added this provision: "And in case of the death of either of my children unmarried or without issue, then I do order that the shares of said child or children so dying may be divided equally among my surviving daughters or their heirs."

Had it not been for the decision in Vaughan v. Dickes, 8 Harris 509, I would have thought this case fell within the exception stated by Sergeant, J., in Eichelberger v. Barnitz, 9 Watts 450, that a devise over, the devisee dying *unmarried* and without issue, indicated a failure of issue within a definite period.

But in Vaughan v. Dickes it was held (the present Chief Justice delivering the opinion) that dying before marriage indicated nothing definite in the period when the failure of issue should take place. The testator in that case devised to Peter Dickes in fee simple, and then provided that if Peter should not marry and have lawful issue the real estate devised should go to his daughter Catharine and her heirs.

Disencumbering the words of the marriage condition as of no importance in the construction, it was held that the provision created an estate tail in Peter, and not an executory devise in favor of Catharine.

Discarding the word *unmarried* in the will before us, as Vaughan v. Dickes compels us to do, Eichelberger and its kindred cases lead us to the same result: Braden v. Cannon, 12 Harris 172; Amelia Smith's Appeal, 11 Id. 9; Price v. Taylor, 4 Casey 95. A contrary doctrine is not to be derived from Langley v. Heald, 7 W. & S. 96; Eby v. Eby, 5 Barr 461; Jessup v. Smuck, 4 Harris 327, and Duval's Appeal, 2 Wright 112; for in each of these cases special expressions are found which lead to the conclusion, a failure of issue within a definite period was

[Matlack *v.* Roberts.]

intended, and consequently that no tenancy in tail could be inferred.

Starting, then, with the position that John Roberts was a tenant in tail under the devise, how did the case stand? The farm devised to him was levied on and sold under execution upon a judgment for the testator's debt, and the proceeds of sale were brought into the Common Pleas for distribution among the lien-creditors.

The effect of that sale was to vest a title in the purchaser discharged of the devise, and to substitute the proceeds of the sale for the land. The auditor made distribution by applying them to the payment, first, of the testator's debts, and next to the legacies charged upon the land, leaving a surplus of $5883.25, which he awarded to John Roberts, the *devisee* (as he reports) under the will of William Roberts.

The Act of 24th February 1834, § 33, provides that the surplus proceeds of a sale upon execution shall be paid to the executor, who shall give security therefor before receiving the money. The proviso then follows that such money shall be distributed as the *real estate* of which it is the proceeds would have been.

This was manifestly intended as the rule to govern the executor in making the distribution. Here the law was so far disregarded that the surplus was not paid to the executor, but it was actually distributed, as the real estate would have been, by ordering it directly to John Roberts, the tenant in tail. The Common Pleas did just what the executor would have done in the end.

But the decree for payment to the tenant in tail was unqualified and unrestricted, and no appeal was taken. The proceeds were paid under it to John Roberts absolutely as the owner, not of a life estate, but as one having an estate of inheritance. He was not a life tenant subject to the 49th section of the Act of 1834, requiring security from a life tenant to protect the remainders or contingent interests. Nor did he fall within the decision in Duval's Appeal, 2 Wright 121, which applies the equity of the Act of 1834 to protect the estate over after a devise of a fee simple *on condition*, for a tenant in tail does not hold on condition.

He has a right to bar the entail and to cut off the contingent interests, and thus vest the proceeds of his sale absolutely in himself: 1 Jarman on Wills 253; Sharp *v.* Thompson, 1 Whart. 151; Act 16th January 1799, § 2, Purd. 421, pl. 4.

The conversion of the estate by the judicial sale did for him that which he might have done by a deed to bar the entail according to the statute.

When by conversion it took from him his statutory means of barring by deed, it did not destroy his right to bar the entail. The right to convert it into an absolute estate in himself remain-

[Matlack *v.* Roberts.]

ing, the conversion into money put the means of executing it into his own hands.

He had the money and the power to make it his absolutely. Any contingent interest must depend on his will. If he made no provision for its enjoyment, how could he be compelled to do so ? Any attempt to compel is met by his assertion of his right to bar the entail. How then can the law construct a promise out of these facts to pay over after his death without issue ? Yet this is the theory of this action, which is assumpsit averring a promise of the executor to pay a party one share of the contingent interest, thus severing as well as raising the supposed duty to protect the contingent interests. The legal implication of a promise must rest upon a duty to pay. But how can a duty to pay arise out of a mere option to pay without the exercise of the option in favor of the party who claims the payment ?

Having the power to retain the estate by barring the entail and the means of so doing by the conversion and the possession of the money, how can it be said that a duty to pay has ever arisen, without security being required by the court, or the exercise of his own option by a provision to secure the contingent devisees ? The fund itself cannot be followed, for its identity was never preserved.

An investment of the fund by John Roberts for the benefit of the contingent devisees might have given some means of following it. But here the money was encumbered by no condition imposed on its payment, and was not preserved by his own act, but has passed into his common estate, and he was bound by no duty to keep it.. It is impossible, therefore, to imply a promise to pay it at his death to others who had no right and no power to restrain him from barring their contingent interests.

To this is to be added that the policy of the law does not favor inheritable interests in chattels or their being limited over to wait an indefinite failure of issue.

The judgment is therefore affirmed.