# H. H. HACKNEY ET AL. v. WM. TRACY ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF FAYETTE COUNTY.

Argued May 14, 1890—Decided October 6, 1890.

[To be reported.]

1. The rule laid down in Eichelberger v. Barnitz, 9 W. 447, that the words " die without issue," or equivalent expressions occurring in a devise, import a general and indefinite failure of issue and an estate-tail in the first taker, has never been shaken and is the law of this state at the present time.

2. There are cases in which, although language somewhat similar was used, the failure of issue contemplated has been held to be a definite one; but in all such cases the decision was controlled by particular reasons, founded on language of the will indicating that such was the intention of the testator.

3. While the fact that the devise over is to a living person by name, has sometimes been held important, in connection with other considerations, such fact is not of itself sufficient to show that a definite failure of issue was intended, and to prevent the legal meaning of the phrase " die without issue " from prevailing.

4. A testator devised land to his daughter Elizabeth, " but in case . . . . . Elizabeth should die without issue, then in that case all her interest that she might or could have in the same to descend to my daughter Mary : " Elizabeth took an estate-tail, enlarged by the act of April 27, 1855, P. L. 368, into a fee-simple, and the devise over to Mary was void.

| 137 | 53 |
| 149 | 435 |
| 137 | 53 |
| 146 | 217 |
| 137 | 53 |
| 147 | 641 |
| 137 | 53 |
| 155 | 630 |
| 137 | 53 |
| 169 | 80 |
| 137 | 53 |
| 196 | 494 |
| 137 | 53 |
| 202 | 4540 |
| 137 | 53 |
| 27 SC | 431 |
| 137 | 53 |
| 227 | 1326 |

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 41 July Term 1890, Sup. Ct.; court below, No. 373 June Term 1889, C. P.

On May 10, 1889, Hiram H. Hackney and John Hackney brought ejectment against William Tracy and others, for fifty-three acres of land in Menallen township. The defendants' plea was not guilty.

At the trial on March 19, 1890, it was shown that Jacob Crabb died on March 25, 1864, seised of a tract of one hundred and fifty acres which embraced the land in controversy, and leaving a will, dated August 12, 1854, by which he disposed of his real estate in the following manner :

### Statement of Facts.

"4. I give and bequeath to my beloved wife Nancy, that part of my farm on which I reside, supposed to contain about seventy-five acres, to have the use of it for her support during her natural life.

"5. And at the decease of my wife Nancy, I give and bequeath the same to my daughter Elizabeth by her paying to my daughter Mary, intermarried with C. V. Tracy, one half the appraised value; but in case my daughter Elizabeth should die without issue, then in that case all her interest that she might or could have in the same to descend to my daughter Mary."

"7. I give and devise to Warwick Miller that part of my farm on which my son William resides, supposed to contain seventy-five acres, in trust for the use of my son William during his natural life, and at his death to be equally divided among his children if he should have any; but in case he should leave no heirs, then in that case to be equally divided between daughters Elizabeth and Mary, but if my daughter Elizabeth die without heirs as above stated, then her interest to descend to my daughter Mary, her heirs and assigns forever." . . . .

The land sued for in this case was a part of the seventy-five acres devised to Elizabeth.

The testator's wife, Nancy, died during his lifetime. Soon after his own death, his will having been admitted to probate, proceedings were had in the Orphans' Court for the appraisement of the land devised to Elizabeth, who thereupon paid to Mary Tracy the one half of its appraised value. In 1865, Elizabeth sold and conveyed her seventy-five acres to her brother William Crabb by a deed in fee-simple, and by subsequent conveyances the title of William Crabb thereto became vested in the plaintiffs. Elizabeth died in 1872 at the age of sixty-six years, without issue, never having been married.

At the date of the will, William was sixty-one years of age, married, but childless; and Mary had six children. Mary died in 1863, leaving said children to survive her. One of them died afterwards, and the remaining five were defendants in this action and claimed title to the land in dispute as her heirs. The plaintiffs were in possession of the remaining part of the seventy-five acres devised to Elizabeth.

At the close of the testimony the court, EWING, J., instructed the jury to render a verdict for the plaintiffs for the land described in the writ. A verdict having been returned as directed, the defendants took this appeal assigning the instruction to find for the plaintiffs, for error.

*Mr. Edward Campbell* (with him *Mr. R. H. Lindsey* and *Mr. T. B. Searight*), for the appellants:

1. The act of April 27, 1855, P. L. 368, practically makes the statute De Donis inoperative, and remits us to the common law as it existed prior thereto, but it has no effect upon executory devises: Nicholson v. Bettle, 57 Pa. 384 ; Price v. Taylor, 28 Pa. 95. This will did not become operative until after the act of 1855 went into effect, and in this respect the case differs from those relied on by the plaintiffs. The devise to Elizabeth was of a base or conditional fee, and created a technical limitation, because, upon failure of the condition that Elizabeth should leave issue, the estate was given over to Mary : 2 Bl. Com., 154 ; Roe v. Jeffery, 7 Term R. 585. The courts favor such a construction of wills as points to a definite failure of issue, and throw weight on small matters to give this effect.

2. A limitation over, on the death of the first taker without issue, was held to be an executory devise, on a definite failure of issue, in the following cases : Rapp v. Rapp, 6 Pa. 45 ; Johnson v. Currin, 10 Pa. 498 ; Curran v. McMeen, 55 Pa. 487 ; Toman v. Dunlop, 18 Pa. 72 ; Nicholson v. Bettle, 57 Pa. 384 ; Coates Street, 2 Ash. 12 ; Mifflin v. Neal, 6 S. & R. 460 ; Hauer v. Sheetz, 2 Binn. 532 ; Eby v. Eby, 5 Pa. 461. In the following cases the context was called in to determine the question, and the interpretation was in the same way : Langley v. Heald, 7 W. & S. 96 ; Scott v. Price, 2 S. & R. 59 ; Berg v. Anderson, 72 Pa. 87 ; Hill v. Hill, 74 Pa. 173 ; Eichelberger v. Barnetz, 17 S. & R. 293 ; Kelso v. Dickey, 7 W. & S. 279. The plaintiffs can recover in this case only if Elizabeth took an estate-tail and the limitation over to Mary is void for remoteness.

3. That Elizabeth's estate cannot be an enlarged fee-tail is manifest, because fees-tail are by virtue of the statute De Donis : 2 Bl. Com., 112 ; and that statute is not in force in Pennsylvania. The general intent of the testator was that his whole

estate should descend to Mary and her heirs, in case William and Elizabeth died without children living at their death. The word "then," in the devise over, is an adverb of time and imports this, referring to the time of Elizabeth's death: Langley v. Heald, 7 W. & S. 96; Eby v. Eby, 5 Pa. 463; Snyder's App., 95 Pa. 183; Turner v. Fowler, 10 W. 325; Wilkenson v. South, 7 Term R. 555, 589. The words issue and heirs are evidently used in the sense of children, as clearly appears from the devise to William, and they must be so construed when this is necessary to carry out the testator's intent: Fahrney v. Holsinger, 65 Pa. 388; Berg v. Anderson, 72 Pa. 87. Mary's children were in being at the testator's death, and the limitation over cannot be held too remote: Rapp v. Rapp, 6 Pa. 45; Scott v. Price, 2 S. & R. 59; Deihl v. King, 6 S. & R. 33; Mifflin v. Neal, 6 S. & R. 460: Criley v. Chamberlain, 30 Pa. 164; Berg v. Anderson, supra.

*Mr. S. L. Mestrezat*, for the appellees:

1. The fact that the devise over is to a person living at the date of the will, is not of itself sufficient to show that the testator contemplated a definite failure of issue: Eichelberger v. Barnitz, 9 W. 447; Lapsley v. Lapsley, 9 Pa. 130; Allen v. Henderson, 49 Pa. 333; Cochran v. Cochran, 127 Pa. 486. In each of these cases, the devise over was to a person in existence. Nor is it true that the courts incline to a definite failure of issue; exactly the contrary is the case. A provision for a definite failure of issue makes a defeasible, uncertain estate, and the law leans in favor of an absolute rather than a defeasible estate: Smith's App., 23 Pa. 11. The act of April 27, 1855, P. L. 368, rendered the statute De Donis practically inoperative, but did not change the meaning of words or the interpretation of the law. We must still determine what estate the devisee would take independent of the act, and if that estate be a fee-tail, the act converts it into a fee-simple. In construing devises, the Rule in Shelley's Case is just as applicable to-day as before the act of 1855: Carroll v. Burns, 108 Pa. 394.

2. The words heirs of the body, are strictly words of limitation, and, when uncontrolled by the context, create an estate-tail. The word issue, means prima facie the same thing: Kleppner v. Laverty, 70 Pa. 72. The defendants claim that the testator

Opinion of the Court.

intended to give Elizabeth a conditional fee. We fail to find any such intention expressed in the will. He evidently intended to make his two daughters equal, and certainly did not intend that Elizabeth should pay half the value of the farm to Mary, and that then it should go to Mary irrespective of the remoteness of Elizabeth's issue. What he intended was to prevent any part of the land devised to Elizabeth from going to William. In the clause disposing of William's part of the farm, the words " die without heirs," applied to Elizabeth, mean issue, as Elizabeth could not die without heirs so long as Mary or her children should be living: Covert v. Robinson, 46 Pa. 274; Moody v. Snell, 81 Pa. 359. Applying the Rule in Shelley's Case to this will, Elizabeth takes an estate-tail.

3. Unless some specific reason for doing otherwise can be given, the Rule in Shelley's Case must be applied: Bender v. Fleurie, 2 Gr. 346; Carroll v. Burns, 108 Pa. 394; Kleppner v. Laverty, 70 Pa. 72; Lawrence v. Lawrence, 105 Pa. 341. The cases in Pennsylvania on this subject are very numerous, and, when examined carefully, sustain the ruling of the court below: Gause v. Wiley, 4 S. & R. 509; Eichelberger v. Barnitz, 9 W. 447; Clark v. Baker, 3 S. & R. 470; Lapsley v. Lapsley, 9 Pa. 130; Vaughan v. Dickes, 20 Pa. 509; Matlack v. Roberts, 54 Pa. 148; Lawrence v. Lawrence, 105 Pa. 335; Stone v. McMullen, 10 W. N. 541; Carroll v. Burns, 108 Pa. 386; Bassett v. Hawk, 118 Pa. 94; Reinoehl v. Shirk, 119 Pa. 108; Cochran v. Cochran, 127 Pa. 486. The word " then " does not, as contended by the defendants, refer to the time of Elizabeth's death, but refers to the fact of her dying without issue. The same word was used, in the same way, in Reinoehl v. Shirk and Lawrence v. Lawrence, supra, and it was not regarded as affecting the construction of the devise, it being held, in each case, that the testator meant an indefinite failure of issue.

OPINION, MR. JUSTICE GREEN:

In one of our most recent cases Reinoehl v. Shirk, 119 Pa. 108, our brother STERRETT, in delivering the opinion of the court, said: " Standing alone, therefore, the words ' die without leaving issue,' and other expressions of the same import, mean an indefinite failure of issue: Taylor v. Taylor, 63 Pa. 481; Middleswarth v. Blackmore, 74 Pa. 414. At common

law, in the absence of words making a different intent apparent, the established interpretation of such expressions in a will is that they import a general indefinite failure of issue, and not a failure at the death of the first taker;. and such has undoubtedly been the rule in this state since Eichelberger v. Barnitz, 9 W. 447."

In the present case, the whole of the devise of the premises in question is in these words : " Fifth. And, at the decease of my wife, Nancy, I give and bequeath the same to my daughter Elizabeth by her paying to my daughter Mary, intermarried with C. V. Tracy, one half the appraised value; but in case my daughter Elizabeth should die without issue, then in that case all her interest that she might or could have in the same to descend to my daughter Mary." There are no other words in the will that make any other provision, or in any manner relate to this part of the estate. The concluding clause relates to the part devised to William.

In the leading case of Eichelberger v. Barnitz, 9 W. 447, the words of the will were : " And further, my will is, because my son Henry is not yet married, that if he should die without leaving any lawful issue, that then his full share shall fall or go in equal shares to my other three children, Adam and Anna Mary and Susanna, to one of them as much as to the other." SERGEANT, J., said, in delivering the opinion: " The principle has now become a settled rule of property, in relation to lands, that if a devise be made to one in fee and if he die without issue, or on failure of issue, or for want of issue, or without leaving issue, then over to another in fee, the estate of the first taker is a fee-tail, which, if he have issue, passes to them ad infinitum by descent as tenants in tail. The estate vests in the first taker fully, and to all intents and purposes as a fee-tail; and any devise over after the failure of such must of course be after an indefinite failure of issue, and bad as an executory devise. It is good as a vested remainder, subject to be barred by a fine or recovery, or deed executed by the tenant in tail, under the act of assembly."

We have repeatedly said that the case of Eichelberger v. Barnitz has never been shaken, and it is certainly the law of this state at the present time. There have undoubtedly been cases in which we have held that, where language somewhat

Opinion of the Court.

similar was used, "the failure of issue," upon which the estate of the first taker was to determine, was a definite, and not an indefinite failure of issue; but, in all of these cases, some particular reasons, founded upon language of the will indicating that the testator intended a definite failure of issue, controlled the decision. It was contended for the appellants that such a reason exists in the present case, in the fact that the limitation over is to the sister Mary, by name, and that she, being a living person at the death of the testator, a definite failure of issue must have been intended, and that such a limitation was not too remote to sustain an executory devise. There are cases in which such a fact is held important, in connection with other considerations, but, standing alone, it is clearly not sufficient, as has been held in many of the cases. Thus, in Eichelberger v. Barnitz the limitation over was to the testator's "other three children, Adam and Anna Mary and Susanna." They were the testator's own children, and were specifically named as second takers, which might be well urged against the failure of issue being regarded as indefinite; yet it was so held.

In the case of Lapsley v. Lapsley, 9 Pa. 130, the devise was to four sons equally, they paying a certain sum, which was to be divided among the testator's daughters. The will then provided: "If any of my sons should die without issue, their part or portion shall be divided between the surviving brothers; also, if a daughter should die without issue, her part or portion shall be divided among her remaining sisters." Here also, although the limitation over was to those of the testator's own children who should survive, the case was held to be one of an indefinite failure of issue, and the estate of the first taker was a fee-tail.

The case of Vaughan v. Dickes, 20 Pa. 509, is still stronger in the same direction, and is strikingly analogous to the present one. The words of the devise were: "And, after the decease of my said wife, I give, bequeath, and devise all the aforesaid real estate, above described, to my son Peter Dickes and daughter Catharine Albertson, to them and their heirs forever, share and share alike, to be equally divided between them; . . . . . and it is further my will that, should my son Peter Dickes not marry and have lawful issue, then the said

real estate heretofore devised to him shall go to my said daughter, Catharine Dickes, and her heirs forever." It was held that the words of the will created an estate-tail in Peter, and not a fee with an executory devise in favor of Catharine and her heirs; that the limitation over was void as an executory devise, it being too remote, as being founded on an indefinite failure of issue. The reasoning of Mr. Justice WOODWARD, in the opinion, is conclusive against the argument of the appellants in the present case, and, were it necessary, it would be instructive to repeat it. A brief quotation may be cited: " But this form of expression, like its equivalents, 'if he die before he has any issue,' or 'on a failure of issue,' or 'for want of issue,' or 'without leaving issue,' have been adjudged again and again, both in England and this country, to import a general and indefinite failure of issue." And again : " This may not be according to the actual intent of the testator. Doubtless he did not intend to create an estate-tail, but, when a testator uses words, without explanation or qualification in the context, which, according to a settled rule of law, import an estate-tail, the legal meaning of the will is to prevail over the actual intention of the testator." It will be noticed, in this case also, that the second taker was a living child of the testator, but, the words of the will coming within the general language which designates an indefinite failure of issue, the ordinary rule was applied.

The same doctrine was applied to almost precisely similar language in Matlack v. Roberts, 54 Pa. 148. AGNEW, J., says, in the opinion, that " a contrary doctrine is not to be derived from Langley v. Heald, 7 W. & S. 96; Eby v. Eby, 5 Barr 461 ; Jessup v. Smuck, 4 Har. 327 ; and Duval's App., 2 Wr. 112; for in each of these cases special expressions are found, which lead to the conclusion a failure of issue within a definite period was intended, and consequently that no tenancy in tail could be inferred." The cases referred to are some of those cited by the appellants in the present contention.

Lawrence v. Lawrence, 105 Pa. 335, was another instance, where a testator devised land to B. & C. " and their heirs, as tenants in common, but, if the said C. should die without leaving lawful issue, then and in that case " his share to go to B., his heirs and assigns, forever; and it was held that C. took a

fee-tail.   The whole subject was again gone over in an elabo-
rate opinion by Mr. Justice TRUNKEY, and all the arguments
in favor of a definite failure of issue were reviewed and an-
swered, and the estate of C. was held to be a fee-tail, upon the
ground of an indefinite failure of issue.

There is no occasion to extend the discussion.   We are
clearly of opinion that the present case is ruled by all the de-
cisions we have cited, and that there is no exceptional reason
for taking it out of their operation.   The act of 1855 converts
Elizabeth's estate into a fee-simple.

Judgment affirmed.