## Eichenlaub's Estate.

Argued March 16, 1932.   Before FRAZER, C. J., SIMP-
SON, KEPHART, MAXEY, DREW and LINN, JJ.

*John H. Lauer,* for appellant.—The use of the words "die without issue" mean a definite failure of issue: English's Est., 270 Pa. 1; Wettengel's Est., 278 Pa. 571; Deeter's Est., 280 Pa. 135; Lewis v. Belt Co., 222 Pa. 139; Dilworth v. Improvement Co., 219 Pa. 527; Siegwarth's Est., 33 Pa. Superior Ct. 622; Schmitt v. Piper, 231 Pa. 378.

There appears to be absolutely no doubt that the words, "die without issue" as used in the present will mean a definite and not an indefinite failure of issue: Seewald's Est., 281 Pa. 483; Mickley's App., 92 Pa. 514; Patterson v. Reed, 260 Pa. 319.

There are a number of cases which, to us, seem to rule this case and, because of this fact, we quote liberally the facts and the law: Kirkpatrick's Est., 280 Pa. 306; Wettengel's Est., 278 Pa. 571; Deeter's Est., 280 Pa. 135; Orphans' Home v. Women's Pa. Society, 279 Pa. 433; Field's Est., 266 Pa. 474; Mebus's Est., 273 Pa. 505.

OPINION BY MR. JUSTICE DREW, April 18, 1932:

Primarily, this appeal involves the construction of the last will and testament, dated October 5, 1907, of Eva Eichenlaub, widow, deceased, of Pittsburgh—who died

December 27, 1907,—in order to determine whether Clarence, one of the designated seven children of the testatrix, took an estate absolute or an estate terminable upon his death without leaving living issue to inherit his share.

After providing for two of her children, in full, by specific legacies, and after attempting to outline a fair and equitable method for the equalization of the shares of the remaining seven children (two of whom were entitled to share in their father's estate because they were born after the execution of their father's will), the testatrix directed in the fourth paragraph that the said seven children should share equally under her will. At least six times in the will, these seven children, four sons and three daughters, designated in the fifth paragraph, are named as the particular objects of the bounty of the testatrix. The eighth and important paragraph reads as follows:

"Eighth: In the event of the death of any of my said children named in fifth paragraph, without leaving issue living to inherit the share of such deceased parent, I will and devise such deceased child's portion under this will to his or her surviving brothers and sisters named in said fifth paragraph, share and share alike."

Other provisions are made in the will touching the minor children, the real estate, and the operation of the business of the testatrix.

After the death of the testatrix, the business was carried on by her heirs, and all four of the sons were engaged in positions connected with it until the death of Clarence. Clarence died at the age of thirty-two in 1927, without leaving living issue. All children were of full age when he died. His widow, Catherine, remarried and is now Catherine Eichenlaub LeSueur. After the audit of the first and final account, filed approximately twenty-three years after the death of the testatrix, the decree of distribution gave, inter alia, to the widow of Clarence one-seventh of the balance of the estate. Exception is

taken to this item of distribution, and we are called upon to pass on this as the principal point in this appeal, although other items are involved.

We are of opinion that the decree below should be affirmed for the reason that the estate given by the testatrix to Clarence vested in him absolutely before his death. We come to this conclusion from a careful consideration of the wording of the entire will and of all the circumstances connected with it. In the fifth paragraph, the testatrix provided that, upon the youngest child's arriving at full age, the Friendship Avenue "real estate or the proceeds of the sale thereof shall go to and vest, share and share alike," in her seven named children. That contingency occurred before Clarence died and, therefore, that estate vested absolutely. Later in the same paragraph, she provided that if the Friendship Avenue property should be sold during the minority of the youngest child, the proceeds should be invested in a suitable home which should, upon the arrival of her youngest child at full age, vest in the seven children as hereinbefore provided. If these proceeds were actually so invested, the estate thereby given and intended to be given, vested absolutely, because the youngest child did reach full age before the death of Clarence as we have already observed. In the sixth paragraph, the testatrix directed that the proceeds of the furniture business on Butler Street should be divided and invested as specified, that is, equally. In the same paragraph, she provided that the rents, issues and profits of the remaining real estate be equally divided among the seven children, and still later, she provided that the proceeds of the sale of the real estate should be divided in equal shares among the seven children. Again in the same paragraph she directed that one year after each minor reached full age, his or her share, invested as provided, should be paid over to him or her by the executors together with the balance, if any, in the hands of the guardian. And in the seventh paragraph, she gave and devised the estate which she

received from her father, to her children in equal shares. In all these later provisions, the gifts and devises were absolute; nowhere in them or in their context is there any language which reduces the estates thus given, and we, therefore, conclude that the only fair interpretation of the first seven paragraphs of the will is that an estate absolute was intended to be given and was given to the children named in the fifth paragraph. Then comes the eighth paragraph, above recited. Following this, in the eleventh paragraph, the testatrix gives and bequeaths all other estate, not before disposed of, share and share alike, to her seven children, again using language importing an absolute and unqualified estate.

The eighth paragraph does not reduce or qualify the estate given. The language therein is unusual in that it says, "In the event of the death of any of my said children named in the fifth paragraph, without leaving issue living *to inherit the share of such deceased parent,* I will and devise such deceased child's portion" to the survivors, etc. The words "to inherit the shares," particularly, cannot be reconciled with appellants' contention; but whatever way we interpret that phrase, we are satisfied that the language of that paragraph does not cut down an estate given, either by the fair meaning of the exact words used or when those words are construed in the light of our former decisions. In addition to the thought which the testatrix is legally held to have had in mind, the possible death of a child before her own death, it seems clear to us that the words "without leaving issue living *to inherit* the share of the deceased parent" must be further construed to mean "without leaving issue living to inherit the share *intended by me for such deceased parent,*" in order to give the language of the testatrix meaning, because we do not believe that the testatrix intended that a child, born to one of her children years after her death, should *"inherit* the share" of that child's parent. To hold so, would be to hold that

every first taker would be compelled to keep and to preserve intact the share of the estate given by the testatrix. That is, all present enjoyment of the estate would be forbidden to all first takers because no first taker could be sure that he would die leaving living issue to *inherit* his share; literally and strictly construed, inheritance of *his* share would be impossible if he consumed any of his estate during his lifetime. Such a result would, of course, be contrary to the normal intention of any fair and right thinking person; and such a conclusion is clearly contrary to what this testatrix said and intended, because all of the other provisions of the will state expressly or by necessary implication that the seven children, or the survivor among them, shall take and *use* and enjoy the estates given them by the testatrix. Besides, we learn from the record that our construction of the will was, by years of dealings adopted, confirmed and approved by the seven children, including the six appellants now attempting to raise the doubt, and while this subsequent fact does not and should not affect our construction of the language of the will, it is proof that all the children of the testatrix believed and acted on the theory that everyone of the children who survived the mother, took an equal and absolute interest in her estate. We may add that a contrary construction by us now might unsettle the estates of the remaining first takers indefinitely, because any of them may die without leaving issue living to inherit. This prolonged uncertainty surely was not the intention of the mother when she wrote her will.

As we read the will, we find no language in it or any circumstance connected with it or with the testatrix which would justify the conclusion that it was the intention of the testatrix that an estate which once vested in one of her children, upon her death or upon the happening of a certain specified event, would cease and determine at some remote and indefinite time, and therefore, on the authority of a long line of decisions dealing

with fairly similar situations, we determine that the estate which vested in Clarence was absolute. We have recently decided, in an opinion by Mr. Justice SIMPSON, 309 Pa. 23, almost the same question as is presented here, in the case of Estate of Mary E. Lerch, deceased, Appeal of Ralph E. Lerch. The rule to apply in interpreting a will such as this is clear: " 'Where there is an absolute gift of a thing, later words in the same instrument will not operate to reduce the estate thus given, unless it is reasonably certain that such was the intention of donor: Robinson's Est., 282 Pa. 531'; Mallory's Est., 285 Pa. 186, 189." In the Estate of Mary E. Lerch, as here, we were called upon to consider the Act of July 9, 1897, P. L. 213, (Act No. 172) and section 14 of the Wills Act of June 7, 1917, P. L. 403, 408, and we repeat here what we said there, quoting from Seewald's Est., 281 Pa. 483, 486: "The rule established by numerous decisions both before and since this legislation (Acts of 1897 and 1917, supra) is that where an absolute estate is devised, followed by a gift over in event of the death of the donee without issue, such words will be construed as referring to death without issue in the lifetime of testator if the gift is immediate, or during continuance of the life estate if the gift is not immediate, and if the donee survives testator or the continuance of the intervening estate, his interest becomes absolute: Mickley's App., 92 Pa. 514; Patterson v. Reed, 260 Pa. 319, 322." Applying the principle just stated, it is clear that the gifts to Clarence, whether they be immediate or not immediate, vested absolutely in him, either upon the death of his mother or upon the youngest child's reaching full age.

We dismiss the exceptions raised in the appeal and affirm the decree of the court below, costs to be paid by the appellant.