## Keeley et al. v. Moon et al.

*Webster S. Achey*, for plaintiffs; *Vanartsdalen & Biester*, for defendants.

KELLER, J., January 22, 1934.—In an action of ejectment brought by the plaintiffs, claiming as devisees under the will of Phoebe H. Satterthwaite, deceased, against the defendants to determine the title to certain real estate formerly belonging to the said testatrix, we gave binding instructions to the jury to render a verdict for the defendant. It is this ruling, as well as our refusal to affirm a point for binding instructions for a verdict in favor of the plaintiffs, that constitute the principal reasons in support of their motion for a new trial.

Phoebe H. Satterthwaite, widow of Thomas Satterthwaite, deceased, died January 5, 1891, leaving a last will and testament dated February 18, 1884, which was duly probated before the Register of Wills of Bucks County on January 27, 1891. The will is brief and disposes of her entire estate after the payment of her debts as follows:

"Item—I give and Bequeath to my Daughter—Elizabeth W. Haines and her Husband John Haines All my Estate both Real personal and mixed during the term of their natural lives—and if they should bothe die without issue—I. E.—without having any Children born By them then at the death of my Daughter Elizabeth W. Haines and my Son in Law John Haines they not having any living legal Heirs—I direct all the Remaining Property at the time of the death

of My Daughter Elizabeth W. Haines and my Son in Law John Haines—to go to my nieces the children of William and Ann Hazlet Share and Shares alike."

Testatrix appointed her said daughter and son-in-law as her executors and empowered them as said executors to sell any real estate of which she died seized. Testatrix died seized in fee of certain real estate consisting of a house and lot in the village of Fallsington. On August 26, 1893, the said Elizabeth W. Haines and John Haines, her husband, as executors, conveyed this real estate to Benjamin C. Satterthwaite, in fee simple. On the same day, the said Benjamin C. Satterthwaite et ux. reconveyed the same to the said John Haines, the consideration in each transaction being $2,000, which was a fair market value for the property. Several years later, to wit, on April 8, 1896, the said John Haines, being seized and possessed of said premises, died, leaving to survive him his widow, the said Elizabeth W. Haines, but no issue. By his last will and testament dated March 24, 1893, he devised and bequeathed his entire net estate to his wife during the term of her natural life and thereafter to the children of Mary Anna Eastburn absolutely. On December 19, 1923, the devisees of the said John Haines, deceased, conveyed the premises in question to James M. Moon and Henry T. Moon, as trustees, "in trust", to provide for the use and occupancy of the dwelling house thereon by the said Elizabeth W. Haines during her lifetime and from and after her decease in trust to make such use or disposition of the said premises as "Falls Monthly Meeting of Friends (Orthodox Body)" may direct. Thereafter the said trustees, agreeably to the conditions of said trust, provided a home for and maintained the said Elizabeth W. Haines until her death, to wit, July 13, 1929.

On February 7, 1931, the plaintiffs, who are the surviving children and grandchildren of the nieces of the testatrix, who are designated as remaindermen under her will upon default of issue of the said Elizabeth and John Haines, instituted this action in ejectment to recover possession of the aforesaid lot of land and the buildings thereon erected, together with all mesne profits since July 13, 1929, to which they claim to be entitled under the provisions of said will. They contend that the said Elizabeth W. Haines and John Haines had only a life estate. The defendants, on the other hand, not only contend that the devise to Elizabeth W. Haines and John Haines was a fee tail, which by virtue of a statute then in force became a fee simple estate, but set up the following additional reasons as a bar to the plaintiff's right to recover, viz.:

(1) That the said Elizabeth W. Haines and John Haines had a power of consumption, which power was exercised and the real estate in question disposed of by the said Elizabeth W. Haines;

(2) That the gift or limitation over to the nieces of the testatrix, the children of William and Ann Hazlet, who were the ancestors of the plaintiffs, was contingent and could not vest until after the death of both John Haines and Elizabeth W. Haines, dying without heirs;

(3) That the limitation over to the nieces of the testatrix, the children of William and Ann Hazlet, was to a class and, being contingent, lapsed.

Our first inquiry will be as to the nature or quantum of the estate devised by Phoebe H. Satterthwaite to her daughter, Elizabeth W. Haines, and her son-in-law, John Haines. In passing upon this question our principal inquiry must be what was the primary and general expressed intent of the testatrix. This intention sought is not that which may be presumed to have existed in the mind of the testatrix, but that which may appear by the plain language of the will or by natural and obvious implications. This must be determined by a consideration of the whole will. Precedents are of little value in the construction of

wills. Decisions in other cases may assist in their interpretation, but it is the intention of the testatrix that is sought after and it controls in the construction: Reiff v. Pepo, 290 Pa. 508, 516; Clark's Estate, 99 Pa. Superior Ct. 490, 493; Hesse's Estate, 280 Pa. 581, 583. On the other hand, while a will is to be construed so as to carry out, as far as practicable, the testatrix's intention, when a testator used words which, according to a subtle rule of law, e. g., the rule in Shelly's case, import a particular estate, the legal meaning of the will is to prevail over the actual intention of the testator: Vaughan v. Dickes, 20 Pa. 509; Glenn v. Stewart, 265 Pa. 208. Quoting Smith, J., in a well-considered opinion which includes a very exhaustive review of prior decisions bearing upon the question at issue, in Seybert v. Hibbert et al., 5 Pa. Superior Ct. 537, 543: "From the variety of purposes and modes of expression found in wills, it is measurably true that each will is in the nature of a law unto itself, and that the construction given to one is no absolute guide to the meaning of another. The import of particular phrases, and even the effect of technical language and words of art, are so largely controlled by the context, the situation of the parties, and the evident purpose of the testator in its entirety, that language which in one will may be held to indicate a certain intention may in another, from differences in the context and the attending conditions, receive a different interpretation. Nevertheless, there are some principles, definitely fixed, and invariable in their application, which are to be followed in the construction of all wills. 'Where well considered and unimpeached adjudications have assigned to certain forms of disposition a determinate result, we are bound by it as an ascertained law of construction:' George v. Morgan, 16 Pa. 95".

Again, where the construction of a will is controlled by a statutory canon of construction, the statute in force at the time of the execution of the will must control. A statute passed after the probate of a will does not affect distribution of a will which became operative before its passage: Wettach v. Horn, 201 Pa. 201; Janney's Estate, 28 Dist. R. 24. Consequently the will in question must be construed under the law in force at the time it became effective, to wit, January 5, 1891, and without reference to the Act of July 9, 1897, P. L. 213, sec. 1, 21 PS §259, note; and the Wills Act of June 7, 1917, P. L. 403, sec. 14, 20 PS §226, which changed the rule of presumption which had theretofore become clearly established, that when a bequest or devise was limited by way of remainder and there was a substituted gift in the event of death of the legatee or devisee without issue, the words "without issue" or "have no issue" or similar phrases imported an indefinite failure of issue and not a failure at the death of the first taker. The effect of these later acts was to change this rule, so that these or similar expressions, in the absence of a different intent shown in the will, shall be construed to mean a failure of issue during the lifetime or at the death of the person named: Smith v. Piper, 231 Pa. 378; Eichenlaub's Estate, 307 Pa. 357; Lerch's Estate, 309 Pa. 23.

Applying the foregoing principles of construction to the will before us, what disposition did Phoebe Satterthwaite intend to make of her estate, and what legal effect is to be given to her will? Did she intend to limit the estate given to her daughter and son-in-law to life estates in all events, in view of her failure specifically to provide for the disposition of the remainder should they leave issue or lineal heirs to survive them, or did she want them to have the enjoyment of her entire estate for their joint lives and that of the survivor, with power to consume, if necessary, and, in the event they should have any issue or lineal heirs, then whatever might remain to descend to them as their heirs? We think the latter is the natural and more reasonable inference as to her intent and

purpose. Notwithstanding the testatrix made no disposition of the remainder, following the limitation to her daughter and son-in-law, directly over to their issue or heirs should they have any, but made a specific provision only in the event of default of issue or legal heirs of said daughter and son-in-law, this nevertheless would have raised a gift by implication of the remainder to such issue or heirs. The law was well settled at the time of probate of this will that an estate tail would be implied from the devise over upon default of issue, implying that if there were issue they should take, whether the primary devise be in fee simple or for life. Such a devise over converted it into a fee tail, cutting it down if a fee simple: Amelong et al. v. Dorneyer, 16 S. & R. 323; Hackney et al. v. Tracy et al., 137 Pa. 53; and enlarging it if a life estate: Seybert v. Hibbert et al., 5 Pa. Superior Ct. 537, 546; Beilstein et al. v. Beilstein, 194 Pa. 152, 154.

Our next inquiry will be concerning the legal effect of the expression used to create the contingency upon which the remainder was to take effect, viz.: "And if they should both die without issue, I. E. without having any children born by them, then at the death of my daughter, Elizabeth W. Haines and my son-in-law, John Haines they not having any legal heirs, I direct all the remaining property at the time of the death of my daughter Elizabeth W. Haines and my son-in-law John Haines, to go to my nieces, the children of William and Ann Hazlet share and share alike."

Under the rule in Shelley's case, whenever an estate for life or any other particular estate of freehold is given to one with remainder to his heirs or heirs of his body, the first taker has a fee simple or a fee tail, and the heirs take by descent and not by purchase: 69 C. J. 505, sec. 1580. This means that, when by a deed or will an estate in land is given to one for life and at his death the remainder to his heirs or heirs of his body, the estate of the life tenant is enlarged to a fee simple or fee tail; the two estates are merged into one, and the first taker takes the whole: Carson et al. v. Fuhs et al., 131 Pa. 256. This rule has been held to apply in cases where the words "issue", "children", "grandchildren", "next of kin", "family", and other similar expressions are used in the technical sense of the word "heirs". As to what expressions constitute words of limitation and what are words of purchase, there is no set rule, it depending largely upon how the gift is to be construed. The word "children", when used in its ordinary sense, is considered a word of purchase and not of limitation and, uncontrolled by the context, must be so construed. But where it is used in an enlarged sense as equivalent to "issue", "heirs", or "heirs of his body", or so as to designate an entire line of lineal descent, it must be construed as a word of limitation: Potts' Appeal, 30 Pa. 168; Haldeman v. Haldeman, 40 Pa. 29; Beilstein et al. v. Beilstein, 194 Pa. 152; Campbell's Estate, 202 Pa. 459; Pifer v. Locke, 205 Pa. 616; Gilland et al. v. Hallett, 240 Pa. 268; Asper v. Stewart, 246 Pa. 251; Smith v. Lindsey, 37 Pa. Superior Ct. 171. On the other hand, the word "issue" is primarily a word of limitation, although not technically so to the same degree as "heirs" or "heirs of his body": Kay v. Scates, 37 Pa. 31; Stout v. Good, 245 Pa. 383, 387; Lockhart's Estate, 306 Pa. 394, 402. "Heirs" has always been regarded as a word of limitation, and when it is employed in connection with the remainderman the rule in Shelley's case applies unless other words in the will clearly demonstrate that it was not a word in its technical sense as a word of limitation: Stout v. Good, 245 Pa. 383, and other cases therein cited. The words "issue . . . without having any children born of them", and "they not having any legal heirs", would indicate to us that the testatrix used them interchangeably and in the sense of descendants and of an indefinite failure of issue. It is our opinion that the general intention

of the testatrix was that her daughter and son-in-law should be the root of a new succession and that those in remainder should take from them by descent as lineal heirs. If this interpretation be correct, then the gift to Elizabeth W. Haines and her husband, John Haines, created a fee tail in them, which was enlarged to a fee simple by the Act of April 27, 1855, P. L. 368: Armstrong v. Michener, 160 Pa. 21, 23; Potts v. Kline, 174 Pa. 513, 514; Shapley v. Diehl, 203 Pa. 566, 568, 569; Pifer v. Locke, supra; Vilsack's Estate, 207 Pa. 611, 613; Wilson v. Heilman, 219 Pa. 237, 240; Kirby's Estate, 235 Pa. 542, 547; Davis v. Van Horn, 241 Pa. 144, 146; Lauer v. Hoffman, 241 Pa. 315, 320. Accordingly, we conclude that Elizabeth W. Haines and John Haines took a fee tail estate under the will of their mother, Phœbe H. Satterthwaite, which the act of assembly enlarged to a fee simple.

In view of the foregoing conclusion, the other two issues raised as a bar to the plaintiffs' right to recover become unimportant. Nevertheless, we will discuss them briefly. Conceding for the sake of argument that Elizabeth W. Haines and John Haines took merely a life estate in these premises, they nevertheless had the right of consumption of the entire estate. It is a rule of universal application, as is stated with many citations in 2 A. L. R. 1297, that "where a will gives a life estate for the use and benefit of the life tenant, by its express terms, with a power of sale or disposition and an express remainder over of 'whatever may remain' or 'be left', 'so much as may remain unexpended' or 'undisposed of', 'what may not be consumed', or some equivalent phrase, the life tenant is entitled to the full possession, control, and management of the property during his natural life, with power to dispose of the whole of it, or so much of the principal as his necessities may require or his judgment dictate. The sole restrictions are that the power shall be exercised by the life tenant during his lifetime for his own use, thus excluding any testamentary disposition thereof; and that it shall be exercised in good faith, and not for the purpose of defrauding the remaindermen."

See also Doran et ux. v. Piper et al., 164 Pa. 430; Dickinson's Estate, 209 Pa. 59, and Watson's Estate, 241 Pa. 271. It is urged by the plaintiffs that the conveyance on August 26, 1893, by Elizabeth W. Haines and John Haines to Benjamin C. Satterthwaite, and a reconveyance on the same day to John Haines, was fraudulent and therefore cannot operate to defeat the rights of the plaintiffs. Whatever may have been the motive for these transfers, however, does not appear. These transfers were made by them within their full discretionary authority as executors of Phoebe Satterthwaite, deceased, and we entertain no doubt that the conveyance to Benjamin C. Satterthwaite vested in him a good title. The mere fact that it was subsequently reconveyed to John Haines is not in itself, in our opinion, sufficient to void the title or even to raise any presumption of fraud. Neither is there anything before us to indicate that the subsequent conveyance on December 19, 1923, by the devisees or remaindermen of the said John Haines, deceased, to the defendants as trustees for the said Elizabeth W. Haines was fraudulent. At most, these conveyances were voidable and not void, and if the plaintiffs, or those through whom they claim, had any knowledge of these transfers and that they were fraudulent, it was their duty to take proper proceedings within the time allowed by law to have them set aside. Otherwise if, after having had notice of fraud, they nevertheless allowed the statutory period to elapse without taking any proceedings to have them set aside, they would be convicted of laches and barred from recovery in this action. The pleadings and the testimony fail to show when plaintiffs, or those through whom they claim, first learned of these conveyances. It appears, how-

ever, that the two conveyances first mentioned were both recorded on December 13, 1893, and the conveyance to the defendants on March 4, 1924, by which the plaintiffs or those through whom they claim became chargeable with notice. Furthermore, the evidence conclusively establishes the fact that not only was the property, as represented by its equivalent, the full money value thereof, entirely consumed for the support and maintenance of the said Elizabeth W. Haines, but that said trustees expended considerably in excess of the value represented by said property for said purpose. Where there is a life estate with power to consume as may be needed for the support of the life tenant, the latter may sell the real estate, if the matter is done in good faith and for the purpose intended by the testator. So long as life tenants do not deplete the corpus for the mere purpose of defeating the testator's intention, the courts will be slow to condemn expenditures as contrary to the power granted. Certainly the trustees cannot be said to have failed to comply with the conditions of the trust imposed upon them in said conveyance. Moreover, there is nothing in the testimony which would warrant or even suggest the inference that the transaction was not bona fide or that fraud was practiced upon the plaintiffs by reason of this conveyance to the defendants: Tyson's Estate, 191 Pa. 218, 226; Endsley v. Hagey et al., 301 Pa. 158, 163.

A third reason assigned as a bar to the right of plaintiffs to recover is that the gift or limitation over to the testatrix's nieces, the children of William and Ann Hazlet, through whom the plaintiffs claim, was contingent and could not vest until after the death of John Haines and Elizabeth W. Haines, dying without heirs, and further that said limitation was to a class, and, said nieces having all died prior to the death of Elizabeth W. Haines, their interest, if any ever existed, lapsed. We have already held that the remainder was devised to any children and issue of John Haines and Elizabeth W. Haines, by implication, the intention of the testatrix undoubtedly having been that, should the said Elizabeth and John Haines have children or issue, such issue should take to the exclusion of her said nephews and nieces. Therefore, the gift to the children of William and Ann Hazlet was a contingent remainder and did not vest until after the contingency of the death of both Elizabeth W. Haines and John Haines without children or issue had occurred: Bond et al. v. Moore et al., 236 Ill. 576, 19 L. R. A. N. S. 540. All the said nieces and nephews of the testatrix are deceased; they survived the testatrix but died during the lifetime of Elizabeth W. Haines. As a general rule, a legacy or devise will lapse where the legatee or devisee dies after the testator but before his interest under the will has vested: 69 C. J. 1053, sec. 2257; King, Admr., v. Crawford et al., Execs., 17 S. & R. 118. We have not been referred to and do not know of any act of assembly of Pennsylvania which prevented a lapse, where the legatee or devisee died before his interest became vested. By section 2 of the Act of May 6, 1844, P. L. 564, which was in force at the time of the testatrix's death, no devise or legacy thereafter made in favor of a brother or sister, or the children of a deceased brother or sister of any testator, such testator not leaving any lineal descendants, shall be held to lapse or become void by reason of the decease of such devisee or legatee in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator; but such devise or legacy shall be good and available in favor of such surviving issue, with like effect as if such devisee or legatee had survived the testator, saving always to every testator the right to direct otherwise. The application of the act was restricted to those situations where the testator left no issue or lineal descendants. In

the instant case, the testatrix left a lineal descendant, to wit, a daughter, so that this act does not apply: Barnett's Appeal, 104 Pa. 342, 348. Furthermore, the devise over to the said nieces was a gift to a class and, said nieces having all died prior to the vesting of the estate, the gift necessarily lapsed. Gross' Estate, 10 Pa. 360.

It is unnecessary to prolong this discussion, as we are convinced that the plaintiffs have no just claim against the defendants, and accordingly, for the reasons herein stated, a new trial must be refused.

And now, to wit: January 22, 1934, the motion for a new trial is dismissed.