# Vaughan *versus* Dickes.

A testator devised all his real estate and property whatsoever to his wife for and during her natural life; and he further directed as follows:

"And after the decease of my said wife, I give, bequeath, and devise all the aforesaid real estate above described, to my son Peter Dickes and daughter Catherine Albertson, to them and their heirs for ever, share and share alike, equally to be divided between them; * * * * and it is further my will, that, should my son Peter Dickes not marry and have lawful issue, then the said real estate heretofore devised to him shall go to my said daughter Catherine Dickes, and her heirs for ever."

Peter Dickes, after the decease of his father, became married, but had no lawful issue, and was still living:—

It was *held*, that the words of the will created *an estate tail* in Peter, and not a fee with an executory devise in favor of Catherine and her heirs; that the limitation over was void as an executory devise, it being too remote, as being founded in an indefinite failure of issue.

. THIS case came up from the Nisi Prius, *Philadelphia.*

It was an amicable action, in which Peter Dickes was plaintiff, and Thomas Vaughan was defendant. The action was entered into in order to determine what title existed in Peter Dickes the plaintiff, to certain real estate which had been devised to him in the will of his father, Peter Dickes, Senior, and which the plaintiff had agreed to sell to Thomas Vaughan, the defendant in the issue. The latter declined paying the purchase-money on the ground of want of power in the plaintiff to make a title *in fee simple* for the same. The question therefore was, what title Peter Dickes acquired under the said will.

The will of Peter Dickes was executed on 19th July, 1836. He

2 A 2

[Vaughan *v.* Dickes.]

died on 20th February, 1843, leaving his widow and two children, Peter, and Catherine the wife of Joseph Albertson.

In his will, Peter Dickes devised to his wife Catherine, "all his real estate and property whatsoever for and during her natural life," &c., describing certain real estate in Kensington—viz., a lot or piece of ground on Queen street, on which were erected three brick houses, one of which, on Allen street, it was stated in the will "was erected and belongs to my son Peter Dickes;" and the other lot or piece of ground, adjoining the above, on which, it was stated a three-story brick house was erected by his "son-in-law Joseph Albertson, and which belongs to him."

The will then proceeded as follows:

" And after the decease of my said wife, I give, bequeath, and devise all the aforesaid real estate above described, to my son Peter Dickes, and daughter Catherine Albertson, to them and their heirs for ever, share and share alike, equally to be divided between them, excepting the houses by them respectively erected as aforesaid; and in case the said real estate cannot be divided by my son and daughter, then they shall select three judicious neighbors, each to select one, and the two selected to choose a third, who, or a majority of whom, shall equally divide the said real estate between them, share and share alike, not taking into consideration the houses respectively erected by them on the aforesaid lots, and it is further my will that should my son, Peter Dickes, *not marry and have lawful issue*, then the said real estate heretofore devised to him shall go to my said daughter, Catherine Dickes, and her heirs for ever."

Catherine Albertson, the daughter of the testator, died before a division of his real estate was made, leaving several children.

Partition was made of the property; and the property first described in the will was allotted to Peter Dickes, he paying to the children of his sister Catherine, or their legal representatives, $377.50.

Peter Dickes, the son, became married after the death of his father, but had no lawful issue. It was stated in the case stated, that Peter had erected two brick buildings on the lot allotted to him, at a cost of $1200. He sold the premises allotted to him to Thomas Vaughan, as before stated.

The case stated concluded as follows:—

If the Court is of opinion that the plaintiff under the terms of the said will, by deed duly executed and acknowledged under the Act of 16th of March, 1799, entitled " An Act to facilitate the barring of entails" or otherwise, can make a perfect title in fee simple, for the real estate in question, then judgment for $500, to be entered for the plaintiff to be released upon the defendant's acceptance of a deed for the property, from the plaintiff; but if

the Court be of a contrary opinion, then judgment to be entered in favor of the defendant. Costs to follow the judgment.

On March 10, 1852, judgment was entered for *the plaintiff* on the case stated.

Such judgment was assigned as error.

*Campbell,* with whom was *Johnson,* for Vaughan.—It was contended that Peter Dickes had not an indefeasible estate in fee, in the estate devised and allotted to him, but that his estate was a fee with an executory devise thereof to his sister Catherine and her heirs, unless Peter should marry and have lawful issue. It was contended as follows, viz.:

In Eby *v.* Eby, 5 *Barr* 461, the testator devised to his daughter certain land "to have and to hold the same to her, her heirs and assigns for ever, but if she should die without lawful issue, then the said lands shall be divided among my other heirs, share and share alike." Held that the word *issue* meant *children,* and that the daughter took an estate in fee, with remainder over by way of executory devise; but as she died *leaving children,* and therefore the event did not happen upon which her estate was to be defeated, it became a fee simple, absolute, and descended upon her children.

In Rapp *v.* Rapp, 6 *Barr* 45, the testator devised to his widow, and directed that his estate should be rented till his youngest child attained 21, and then appraised and accepted, or sold and divided equally among his eight children, and that in case any of them should die unmarried and without lawful issue, the share of the one so dying should revert to the survivors, &c." The estate limited over was held to be good as an executory devise.

1 *Roll. Abr.* 835, pl. 4. There was a devise of lands to B. in fee and of other lands to C. in fee, subject to a proviso that if either died before they were married or before they were twenty-one, and without issue, then the estate of him dying should go to the survivor; it was held that each took an estate in fee, with an executory devise over to the survivor for life.

"Nothing can be clearer in point of law than that if an estate be given to A. in fee, and by way of executory devise an estate be given over which may take place within life or lives, &c., &c., the latter is good by way of an executory devise." Per KENYON, Ch. J., 7 T. *R.* 595.

In this case the estate of Peter was a fee. The conditions if he should not marry and have lawful issue are both events which must happen, if at all *in his lifetime;* and therefore it was not an *estate tail:* it is therefore a fee limited upon a fee, which cannot be good otherwise than *as an executory devise.*

*Kreider,* for Dickes, the defendant in error.—It was submitted

that the words "Should my son Peter Dickes not marry and have lawful issue, then the said real estate heretofore devised to him shall go to my daughter Catherine Dickes, and her heirs for ever," creates *an estate tail,* and that the period upon which it is to go over, *is too remote for an executory devise.*

The words referring to the death of a person without issue, whether the terms be, "*if she die without issue,*" "*if he have no issue,*" or, "if he die before he has any issue," " or for want, or in default of issue," unexplained by the context, are construed to import a general indefinite failure of issue: 2 *Jarman on Wills,* p. 418. See 4 *Kent's Com.* p. 273, 276; Eichelberger *v.* Barnitz, 9 *W.* 450. This rule admits of two exceptions; the first is where the phrase is, leaving no issue, with respect to which the settled distinction is, that applied to real estate it means an indefinite failure of issue: but in reference to personal estate (and real estate directed to be converted is for this purpose regarded as personalty) it imports a failure of issue at the death: 2 *Jarman on Wills* 418.

The words "provided always, that if my son Daniel *begets lawful heirs,* then, after my decease, the proceeds of said plantation to be equally divided, share and share alike, to the heirs of my son Daniel." It was considered by the Court that Daniel took in fee tail. 4 *Harris* 380, Maurer *v.* Marshall.

There is no clause or word in the will limiting the time when the estate is to go over *to a life or lives in being.* The testator has not limited the time to the death of Peter; nor did he *intend* that if Peter should die leaving issue, and that issue should become extinct in a month or a year afterwards, the remainder should not take effect. A definite failure of issue is where a precise time is fixed by the will for the failure of issue. An indefinite failure of issue is the converse of the other, and means a failure of issue whenever it may happen: 4 *Kent's Com.* 274; 6 *Ser. & R.* 32. The word "then," as commonly interposed between two limitations, has no effect in restricting words importing failure of issue, to issue living at the death of the first taker: 8 *Bligh N. S.* 469; 6 *Jurist* 619; 2 *Atk.* 308.

Generally the words " *lawful issue*" in a will, have as extensive a signification as " heirs of the body," embracing descendants of every generation: Kingsland *v.* Rapelaye, 3 *Edw.* 1; Crozier *v.* Crozier, *Dru. & War.* 373; Minter *v.* Wraith, 13 *Sim.* 52; 1 *Brown,* app. 55.

In the case of Eby *v.* Eby, 5 *Barr* 465, referred to on the other side, the Court did not say that the word " *issue*" meant children, but that the word heirs meant children, and should read as follows: " I give to my daughter Elizabeth, and to her heirs and assigns for ever; but if she should die without issue, then the lands devised to her shall be divided among my other *children,*" as pointing to a definite failure of issue in the lifetime of the other child-

ren.   The reason given was, that by reference to the other parts of
the will, the testator meant by the word heirs, his other children.

The case in 7 *Term Rep.* was the case of a devise to T. F. and
his heirs for ever; and in case he should depart this life and leave
no issue, then the said dwelling-house should be and return unto
Elizabeth, Mary, and Sarah, the three daughters of W. and M.
Friswell, *or the survivor or survivors of them*, to be equally divided,
share and share alike.   In the case of Rapp v. Rapp, 6 *Barr* 45,
the property given or bequeathed was personal.   The word "sur-
vivors" were the persons to take on his dying without issue, which
evidently there meant the survivors of his children.

It was further submitted, that if the construction of the plaintiff
in error were to govern, the estate previously given in the will
could only be divested by the happening of *both* the events of not
marrying and not having lawful issue: 1 *Yeates* 316; *Id.* 411; 2
*Stra.* 1175.

Where a fee is first given in a will, the courts construe *or* to
read *and.*   Devise to A. in fee, but if he dies under age, or
unmarried, and without issue, then all the events must concur to
defeat the estate: Frainingham v. Brand, 1 *Wills* 140; Holmes
v. Lessee of Holmes, 5 *Bin.* 252; Hauer v. Sheets, 2 *Bin.* 532;
13 *Ser. & R.* 205, Welsh v. Elliott.

The opinion of the Court was delivered, May 19, by

WOODWARD, J.—The question presented on this record is, whe-
ther Peter Dickes took under his father's will a fee with an exe-
cutory devise over to his sister Catherine, or an estate tail.   This
resolves itself into another question, whether the contingency
contemplated was a definite or an indefinite failure of issue; if
definite, the devise may operate by way of executory devise; if
indefinite, the law cuts it down to an estate tail.   A definite
failure of issue is when a precise time is fixed by the will for the
failure to occur, as in the case of a devise to A., but if he dies
without lawful issue living at the time of his death, then over to B.
An indefinite failure of issue, means a failure whenever it shall
happen, sooner or later, without any fixed period within which it
must happen—the time when the issue of the first taker shall
become extinct: 4 *Kent Com.* 274; *Jarman on Wills* 419.

The words before us are, "and it is further my will that should,
my son Peter Dickes not marry and have lawful issue, then the
said real estate heretofore devised to him, shall go to my said
daughter Catherine Dickes and her heirs for ever."   As Peter
could not have lawful issue unless he married, we may disencumber
the sentence of the marriage condition.   But the testator manifestly
did not mean by the word "*have*" that the mere birth of a child,
which should die the next day or hour, should defeat the devise
over.   His will shows his intention to divide his estate equally

[Vaughan *v.* Dickes.]

between Peter and Catherine, and as Peter was unmarried and childless, but Catherine was married and had children, the idea in his mind evidently was, that if Peter should die without issue, his share of the estate should go to Catherine and her issue. We do no violence to either the language or the intention of the testator by reading the clause in this wise—" and it is further my will that should my son Peter Dickes die without lawful issue, then the said real estate heretofore devised to him, shall go to my said daughter Catherine Dickes and her heirs for ever."

But this form of expression, like its equivalents—"if he die before he has any issue," or "on a failure of issue," or "for want of issue," or "without leaving issue," have been adjudged, again and again, both in England and this country, to import a general and indefinite failure of issue. The series of cases in the English law have been uniform, says Ch. KENT, 4 *Com.* 276, from the time of the year-books down to the present day, in the recognition of the rule of law, that a devise in fee with a remainder over, if the devisee dies without issue or heirs of the body, is a fee cut down to an estate tail, and the limitation over is void by way of executory devise as being too remote, and founded in an indefinite failure of issue. Wherever an executory devise is limited to take effect after a dying without heirs or without issue, subject to no other restriction, the limitation is void, for the policy of our law will not suffer property to be tied up and rendered unalienable in expectation of such remote contingencies: *Fearne on Remainders* 445. An executory devise limited to take effect in the event of a person dying without issue, generally is void for remoteness, though in some cases such a limitation may be construed to give the first taker an estate tail: *Lovelass on Wills* 288; *Jarman on Wills* 418; Londay's Case, 9 *Co.* 127; King *v.* Rumbail, *Cro. Jac.* 448; Forth *v.* Chapman, 1 *P. Williams* 663; Hope *v.* Taylor, 1 *Burr.* 268; Attorney-General *v.* Bayley, 2 *Bro.* 553; Knight *v.* Ellis, *Id.*; Denn *v.* Slater, 5 *Term R.* 335; Doe *v.* Ellis, 9 *East;* Burton *v.* Salter, 17 *Vesey* 479; Crock *v.* De Vaudes, 9 *Fra. Vesey* 197.

In Pennsylvania the cases are not all strictly reconcileable with these distinctions; but in Eichelberger *v.* Barnitz, 9 *Watts* 447, and Langley *v.* Heald, 7 *W. & Ser.* 96, the two cases which are said in Eby *v.* Eby, 5 *Barr* 463, to settle the law in Pennsylvania, the rule and its exceptions are well discussed by Justice SERGEANT. In Langley *v.* Heald, the words "if he die and leave no lawful issue, then to his daughter Elizabeth, if she shall be then living, and to her heirs and assigns," were held to mean a definite failure of issue; "then" referring to the death of the devisee in the lifetime of Elizabeth. In Eichelberger *v.* Barnitz, the words were "if my son Henry should die without leaving any lawful issue,

[Vaughan v. Dickes.]

then his full share shall go over," &c.   These words were held to import an indefinite failure of issue, and the executory devise was defeated as founded in a contingency too remote.   The utmost length that has been hitherto allowed for the contingency to happen in executory devises, is that of a life or lives in being, and twenty-one years and a fraction afterwards : 2 *Black.* 174.

It follows from these distinctions and principles that the words of this testator must be construed to create an estate tail in his son Peter, and not an executory devise in favor of Catherine and her heirs.

This may not be according to the actual intent of the testator. Doubtless he did not intend to create an estate tail, but when a testator uses words, without explanation or qualification in the context, which, according to a settled rule of law, import an estate tail, the legal meaning of the will is to prevail over the actual intention of the testator.   Artificial rules being founded in considerations of public policy, must often frustrate the intentions of testators, and it is well they should, for the law is wiser than any one man.   The law will not permit men to tie up their estates for generations, however clearly they may intend it; but favors a system of alienation, whereby estates are improved and society benefited. This is the policy of our statute for barring entails, and because they may be so readily barred, the Courts favor estates tail rather than executory devises.

The judgment is affirmed.

BLACK, C. J., dissented.