# Dilworth, Appellant, v. Schuylkill Improvement Land Company of Philadelphia.

*Constitutional law—Exercise of judicial functions—Act of July* 9, 1897, *P. L.* 213.

The Act of July 9, 1897, P. L. 213, entitled "An Act declaring the construction of words in a deed, will, or other instrument importing a failure of issue," is not a wrongful exercise of judicial functions, and is constitutional.

*Wills—Construction—Default of issue—Life estate—Act of July* 9, 1897, *P. L.* 213.

By will made in 1901, a father bequeathed and devised all his residuary estate to his daughter "for her sole and separate use, free from any

estate or control in any husband she may have, now, or in contempla-
tion, with power to appoint among her children or their issue, if any she
have; and in default of issue of my said daughter," to named collaterals.
Both at the date of the will and at testator's death, the daughter was
neither married nor in contemplation of marriage.   *Held*, (1) that the
Act of July 9, 1897, P. L. 213, applied; (2) that the will implied a definite
failure of issue; and (3) that the daughter took a life estate only.

Argued Nov. 5, 1907.   Appeal, No. 79, Oct. T., 1907, by
plaintiff, from judgment of C. P. No. 2, Allegheny Co., April
Term, 1906, No. 816, on case stated in suit of Carrie S. Hays
Dilworth v. The Schuylkill Improvement Land Company of
Philadelphia.   Before MITCHELL, C. J., FELL, BROWN, MESTRE-
ZAT, POTTER and STEWART, JJ.   Affirmed.

Case stated to determine the marketable title to real estate.

SHAFER, J., filed the following opinion:

This is an amicable action for the purchase money of land
which the defendant refuses to pay because, it says, the plain-
tiff does not own the land in fee, but has only a life estate.

From the case stated it appears that the plaintiff's title is
under her father's will, by which the testator devises to her
the residue of his estate, of which the land in question is a
part, with power to appoint among her children or their issue
if any she had, and "in default of issue of my said daughter"
then to certain named persons, and if either of these should
die without issue, then to the survivors.   The gift to the
daughter was intended to be for her sole and separate use,
but it appears that she was not then married or in contempla-
tion of marriage.   The will was executed in the year 1901.
It was practically admitted upon the argument of the case
that if this will had been made before the passage of the Act
of July 9, 1897, P. L. 213, it would have given a fee to the
plaintiff, the property being given to her and in default of is-
sue of the first taker to the other named persons.

The act in question provides that in a deed or will the
words "die without issue," or "die without leaving issue," or
"have no issue," or any other words which may import either
a want or failure of issue of any person in his lifetime or at the
time of his death, or an indefinite failure of his issue, shall be
construed to mean a want or failure of issue in the lifetime or

at the death of such person, and not indefinite failure of his issue, unless a contrary intention shall appear in the instrument.

It is contended by the defendant that this act has changed the rule of law above mentioned, under which it is admitted, if it were not for this act, the plaintiff would take a fee tail, which under the act of 1855 would be deemed a fee simple. It is claimed by the plaintiff that the act is unconstitutional and void, and that even if constitutional it does not affect the construction of the will in the present case.

The general result intended to be accomplished by the act is quite plain. Certain words and phrases in regard to failure of issue of a grantee or devisee had acquired in the law a certain meaning and effect, which was, that subject to the power of the grantor or devisor to express a different meaning, they had the legal effect of giving a fee to the first taker. This not being the meaning which one not learned in the law would usually conceive the words to have, led to frequent failures of testators to accomplish what they really intended, and was well known in numerous cases to have frustrated the actual intention, giving a fee tail where only a life estate was intended. It seems plain that the intention of the legislature was to provide that these words and expressions which, standing by themselves, heretofore imported a fee tail, and thus a fee simple, unless the contrary was otherwise indicated in the will, should thereafter indicate a life estate, unless otherwise indicated in the will. That the legislature has power to do this, we cannot doubt. It is competent for it to direct in what sense words and phrases shall be used in wills and contracts thereafter made. It is true that the act does not directly express that the words shall mean so and so, but that they shall be " construed to mean " so and so, and this, it is argued, is an attempt to direct the courts in the exercise of a judicial function, and therefore a usurpation of judicial functions on the part of the legislature. Taken in a strictly literal sense, this might be true, but the expressions " shall be construed," " shall be deemed," etc., have been used time out of mind in statutes to import the same as " shall mean." For example, in the act of 1855, it is provided that wherever an estate tail would be created by existing laws, it " shall be taken and construed to be a fee simple." It is not intended to be an interference

with the conclusions of the court as to the meaning of certain words, but a direction to those who use the words, in what sense they shall be used. The only case to which we have been referred by counsel for the plaintiff in support of their contention of the unconstitutionality of the act is that of Titusville Iron Works v. Keystone Oil Company, 122 Pa. 627, in which case there was before the court an act which undertook to give to laborers a mechanic's lien by direction to the courts to construe the acts already existing so as to include laborers. This was either an attempt to amend the existing laws as to mechanic's liens without reciting them for amendment, as the constitution requires, or else it was a direction to the courts to overrule its former decisions in regard to the meaning of those acts, and to construe them otherwise. As a matter of course the act was void, taking it either way, and the court expressly points out that such acts are void by reason of the provisions of art. 3, sec. 6, of the constitution, which would not have been void as to future cases under the previous constitutions. The effect of the act in question in this case is not to change in any respect any previous statutory provision, but only a common-law rule, as to the change of which no particular form is required by the constitution. We are therefore of opinion that if the meaning and effect of the act be as above stated, it is not an attempt on the part of the legislature to exercise a judicial function, but is an attempt to change a rule of the common law, which the legislature has power to do.

We have said that the intention of the act is to change the meaning of certain expressions so as to make them mean a definite failure of issue instead of an indefinite, in the absence of other indications to the contrary contained in the instrument, and we understood it to be admitted on the argument that such was its effect if valid, although it was suggested by plaintiff's counsel that the language of the act is self-contradictory. It must be admitted that the phraseology of the act is somewhat peculiar and in a sense ambiguous. The enactment is that words which may import either X or Y shall be construed to mean X and not Y, unless it appears by the will that they mean Y. These words may be read in such a sense that the futile result would be a direction to construe words importing

X to mean X and words importing Y to mean Y.   The obvious meaning, however, is that words which may import X or may import Y, that is, as to which it is doubtful from the words themselves which they import being applicable to either, shall be construed to mean the first, unless a contrary intention appears in the instrument by something besides the words themselves.   The act, therefore, appears to mean that if words are used which in themselves leave it doubtful whether the failure of issue intended is definite or indefinite, they shall mean a definite failure of issue, unless something else in the instrument shows that they are not so intended.   The words of the will in this case, "in default of issue of my said daughter," are in themselves applicable to a definite or to an indefinite failure of issue, and would be applied to either as the intention of the testator should appear from the will.   They are, therefore, words which in the language of the act may import either a failure of issue of the daughter at her death or an indefinite failure of her issue.   The rule of law prior to the act was that in the absence of any indication in the will to the contrary these words imported an indefinite failure of issue, and the effect of the act is to change that rule so that in the absence of other indications in the will the words are to mean a definite failure of issue.   We are of opinion, therefore, that the act is directly applicable to this case.

It is also argued by plaintiff's counsel that even if the act be constitutional, there is enough in the will to show that an indefinite failure of issue was meant.   We are unable to see anything in the will which indicates one way or the other which kind of failure was meant, except the words "in default of issue," and these, if we are right, are the very words which, standing alone, the legislature has directed shall mean a definite failure of issue.   Being of the opinion, therefore, that the plaintiff is not the owner in fee simple of the land in question, it is ordered that judgment be entered for the defendant with costs.

*Error assigned* was in entering judgment on the case stated in favor of the defendant.

*Thomas Patterson*, of *Patterson, Sterrett & Acheson*, for appellant.—The act of 1897 is unconstitutional: DeChastellux v. Fairchild, 15 Pa. 18; Titusville Iron Works v. Keystone

Oil Co., 122 Pa. 627; Com. v. Warwick, 172 Pa. 140; Greenway v. Greenway, 1 Giff. 131.

Under the English cases on this act, which will be found collected under case of Dawson v. Small, 10 Eng. Rul. Cases, 847, it is held that the rule of construction introduced by the act as to words importing an indefinite failure of issue is only applicable where the expression importing a failure of issue is ambiguous.

*John S. Wendt*, with him *Johns McCleave*, for appellee.— The act of 1897 is a valid exercise of the legislative power: Sharp v. Thompson, 1 Wharton, 139; Heffner v. Knepper, 6 Watts, 18; Potts's Appeal, 30 Pa. 168; Linn v. Alexander, 59 Pa. 43; Keating v. McAdoo, 180 Pa. 5; Eichelberger v. Barnitz, 9 Watts, 447; Pettit v. Fretz's Executor, 33 Pa. 118.

The legislature has power to give greater effect to evidence than it possesses at common law, and in both civil and criminal proceedings it may declare what shall be prima facie evidence: State v. Cunningham, 25 Conn. 195; Fong Yue Ting v. United States, 149 U. S. 698; Banks v. The State, 124 Ga. 15; State v. Barrett, 138 N. C. 630; Com. v. Williams, 72 Mass. 1; Banks v. The State, 124 Ga. 15; Postmaster General v. Early, 25 U. S. 136; Singer Mfg. Co. v. McCollock, 24 Fed. Repr. 667; Kern v. Legion of Honor, 167 Mo. 471.

The legislature has, from time to time, passed similar statutes prescribing rules for the interpretation of wills: Garman v. Glass, 197 Pa. 101; Price v. Taylor, 28 Pa. 95; Karchner v. Hoy, 151 Pa. 383; Reinhart v. Lantz, 37 Pa. 488; Gross's Est., 10 Pa. 360; Lisle's Est., 22 Pa. Superior Ct. 262; Shirley v. Postlethwaite, 72 Pa. 39; Schuldt v. Herbine, 3 Pa. Superior Ct. 65; Crosky v. Dodds, 87 Pa. 359; Dilworth v. Gusky, 131 Pa. 343.

We submit that under the plain terms of our act of 1897, the phrase "in default of issue" must be construed to mean a definite failure of issue and, therefore, the testator's daughter only took a life estate: Taylor v. Taylor, 63 Pa. 481; In re O'Bierne, 1 Jones & LaTouche, 352.

Per Curiam, January 6, 1908:

Judgment affirmed on the opinion of the court below.