# Hays's Estate.

*Wills—Construction—Trusts and trustees—Separate use trust.*

1. A separate use trust is ineffective, where there is no coverture when the will takes effect, and none is in contemplation.

*Wills—Construction—Life estate — Estate in fee — "Issue" — Definite failure—Birth of children—Act of July 9, 1897, P. L. 213.*

2. The word "or" in the clause of the Act of July 9, 1897, P. L. 213, which provides that the words "have no issue," or other similar words, "shall be construed to mean a want or failure of his issue in the lifetime *or* at the death" of the first taker is intended as a conjunctive, and the failure of issue is to be determined as of the date when the first taker dies.

3. Where a testator dying in 1922, gives his residuary estate to an unmarried daughter, not in contemplation of marriage, for her sole and separate use, "with power to appoint among her children or their issue if any she bears, and, in default of issue," then over, the daughter takes an estate for life, and the fact that she subsequently marries and has a child born to her does not increase her estate to a fee.

*Decedents' estates — Sale under Price Act — Life estate — Remaindermen—Private sale—Act of June 7, 1917, P. L. 363, and June 8, 1917, P. L. 447.*

4. A life tenant of real estate cannot, by private sale, convey anything more than her life estate.

5. In such case, the orphans' court properly exercises its discretion in refusing to approve the sale of the whole fee to the proposed purchaser, where a much larger price is offered by another party.

6. The fact that the person offering the larger sum was a tenant of the proposed vendee in possession of the premises under the agreement with the life tenant, is immaterial, inasmuch as the rule that the title of the landlord cannot be attacked by his tenant, is inapplicable in such a case, where the sole question is whether the sale is for the best interests of the estate.

Argued May 11, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 54, March T., 1926, by Paul Whitcomb, from decree of O. C. Allegheny Co., Oct. T., 1925, No. 375, dismissing petition to sell real estate, in estate of Charles Hays, deceased. Affirmed.

Petition to sell real estate. Before MITCHELL, J.

The opinion of the Supreme Court states the facts.

Petition dismissed. Paul Whitcomb, proposed vendee, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Joseph Gazzam* and *Joseph Stadtfeld,* for appellant. —A fee is now vested in testator's daughter: Dilworth v. Land Co., 219 Pa. 527; McCall v. Umbenhauer, 270 Pa. 351; MacConnell v. Lindsay, 131 Pa. 476; Steinmetz's Est., 168 Pa. 175; McCullough v. Coal Co., 210 Pa. 222; Smith v. Piper, 231 Pa. 378; Wettengel's Est., 278 Pa. 571.

The words purporting to give a power of appointment to testator's daughter do not cut down the devise to her: Yarnall's App., 70 Pa. 335; Grimes v. Shirk, 169 Pa. 74; McKee v. McKinley, 33 Pa. 92; Langley v. Conlan, 212 Mass. 135; Smith v. Houblon, 26 Beav. 482.

No valid trust was created by this will: DeHaas v. Bunn, 2 Pa. 335; Stoner v. Wunderlich, 198 Pa. 158; Delbert's App., 83 Pa. 462.

If it be held that Carrie Hays Craig has not a fee, but that the power to appoint is effective, then the agreement of sale by her was a lawful conversion under the exercise of said power: Dilworth v. Land Co., 219 Pa. 527; McNeile's Est., 217 Pa. 179; McFadden v. Drake, 79 Pa. 473; Darling v. Edson, 4 Pa. Superior Ct. 498.

The execution of the agreement of sale by Carrie Hays Craig was undoubtedly intended by her as an exercise of her power of appointment under the will: Hupp v. Coal & Coke Co., 284 Pa. 529.

The People's Savings & Trust Co., by reason of its relation to Paul Whitcomb, as his tenant, has no right to acquire and avail itself of a title paramount to his title: Galloway v. Ogle, 2 Binney 468; Cooper v. Smith, 8 Watts 536; Holt v. Martin, 51 Pa. 499; Matthews' App., 104 Pa. 444; Farmers Deposit Bank v. Fuel Co., 29 Pa. Superior Ct. 69; Ewing v. Cottman, 9 Pa. Superior Ct. 444.

The approval clause in the contract cannot be invoked by the vendors as an excuse for refusal to convey the fee if they have it to convey: Medoff v. Vandersaal, 271 Pa. 169; Cape May Real Est. Co. v. Henderson, 42 Pa. Superior Ct. 1; Dawson v. Vrostyak, 71 Pa. Superior Ct. 344.

*Lee C. Beatty,* for Lee C. Beatty, guardian ad litem.— Carrie Hays Craig, the first taker under the will of Charles Hays, deceased, has only a life estate in the residuary estate: Dilworth v. Land Co., 219 Pa. 527; English's Est., 270 Pa. 1.

Carrie Hays Craig, the first taker, had no right to exercise the power of appointment outside of the class represented by her children, or their issue: Beilstein v. Beilstein, 194 Pa. 152; Bechtel v. Fetter, 267 Pa. 173; Reisher's Est., 261 Pa. 223; List's Est., 283 Pa. 255;

Lippincott's Est., 276 Pa. 283; Seybert v. Hibbert, 5 Pa. Superior Ct. 537; Carrigan's Est., 68 Pa. Superior Ct. 264; Rafferty's Est., 281 Pa. 325; Wickersham v. Savage, 58 Pa. 365; Pepper's Est., 120 Pa. 235.

*Thomas Patterson,* with him *James S. Crawford,* of *Patterson, Crawford, Miller & Arensberg,* for appellee. —Mrs. Craig has only an estate for life: Dilworth v. Land Co., 219 Pa. 527; English's Est., 270 Pa. 1; Smith v. Piper, 231 Pa. 378; Kay v. Scates, 37 Pa. 31; George v. Morgan, 16 Pa. 95; Robinson's Est., 149 Pa. 418; Mebus's Est., 273 Pa. 505; Deeter's Est., 280 Pa. 135.

There has been no exercise of the power of appointment.

People's Savings & Trust Company of Pittsburgh, though a tenant, may validly bid and become purchaser: Smith v. Crosland, 106 Pa. 413.

OPINION BY MR. JUSTICE SADLER, June 26, 1926:

Charles Hays died in 1902, and by his will bequeathed and devised his residuary estate to an unmarried daughter for her sole and separate use "with the power to appoint among her children or their issue, if any she have, and, in default of issue," the same was given to others named. A trustee was designated with power to sell the real estate and reinvest the proceeds, but he declined to act, and no substitute has been appointed. Since the decease of the father, the real estate has been held by the daughter, who, at the time of his death, was single. Later, she married, and joined with her husband, Dilworth, in an agreement to sell the property now in question, claiming to have acquired a fee therein. The separate use trust intended by the testator was ineffective, there being no coverture when the will took effect, and none in contemplation: Yarnall's App., 70 Pa. 335. Eliminating this feature, it was insisted that the words used, importing an indefinite failure of issue, gave to the daughter a fee tail, which became an abso-

lute estate by the Act of 1855, and that the limitation over was without effect. Prior to the passage of the Act of 1897 (July 9, P. L. 213), the result contended for would doubtless have been upheld. A different construction is now reached, and the language employed must be held to indicate a definite failure of issue, in the absence of a clear expression of intention showing that the contrary was intended. The court so held when the question was brought before it on a case stated to determine the marketability of the title, the proposed vendee of the Dilworths declining to carry out a contract to purchase, on the ground that the wife possessed only a life estate, and a fee could not be conveyed. On appeal, the judgment for defendant was affirmed: Dilworth v. Schuylkill Imp. Land Co., 219 Pa. 527.

Some years later, the husband died, the widow remarried, and one son has been born of this union. In 1921, a new agreement of sale was entered into by Mr. and Mrs. Craig with the then tenant of the property, who later assigned his rights to Paul Whitcomb, present appellant. By this contract, recorded in 1922, the consideration was fixed at $100,000, with certain stipulations as to payment of taxes and improvements, making its value to the vendors as of 1925, when this proceeding was instituted, $127,500. The conveyance was subject to approval by the orphans' court, the vendee to be reimbursed if this could not be obtained. Though the purchaser, or his assignee, went into possession of the property, no application was made for leave to sell until 1925, four and one-half years later. Then the petition of Mrs. Craig was presented, based evidently on the Revised Price Act of 1917, averring that she was possessed of the life estate. It set forth that the conversion of the real estate would be to the interest and advantage of all concerned, and that the sum offered was "a fair, full, just and adequate price, and a better price than could be obtained" if the premises were exposed at public sale.

A guardian ad litem for the minor, as well as "trustee for the children in posse of Carrie Hays Craig, for the purpose of representing the interests of said minor and said children," was appointed. Later a hearing was had, at which time it was insisted that the approval of the sale was a matter of right, since the daughter had become, by reason of the birth of issue, the owner of an absolute estate, and, even if this was not so, that a private sale should be sanctioned, since it was for the benefit of all interested. The value of the property was fixed as of the date of the agreement to convey in 1921 at $100,000, the price to be paid being in fact greater than this sum, as already noticed, in view of additional outlays assumed by the purchaser. The People's Savings & Trust Company, tenant of the proposed vendee, offered to pay $135,000, and the court, in the exercise of its discretion, refused to approve the private sale to Whitcomb, on the ground that the proposed transfer was manifestly for a sum less than could be obtained, and therefore not to the advantage of the estate. The latter excepted to this order, and he is the one who now appeals.

It is contended that Mrs. Craig became the absolute owner of the estate when a child was born to her. Admittedly, under the former decision construing the same instrument (Dilworth v. Schuylkill Imp. Land Co., supra, followed in English's Est., 270 Pa. 1), the will of testator gave to her but a life estate, since, by reason of the Act of 1897, the language employed must be construed as referring to a definite, rather than an indefinite, failure of issue. The argument of appellant rests on the interpretation of certain words used in that statute. In part it provides, if the will uses the words "have no issue, or any other words which may import either a failure or want of issue of any person in his lifetime or at the time of his death, or an indefinite failure of his issue, [these words] shall be construed to mean a want or failure of his issue in the lifetime or at

the death of such person." The conclusion is drawn that the rule of construction fixed by the act becomes inoperative if there be any children born during life. In commenting upon the suggestion, the learned court below pertinently remarked: "It is argued the birth of issue has turned that which was a life estate into a fee; but the possibility of issue was present when the case was decided [before], and if a birth was to change the legal status, the argument of the opinion would not have been based solely on the interpretation of the statute, which converted that which, before the statute was passed, would be a fee, into a life estate, regardless of whether issue had been born or not."

In the earlier litigation referred to, involving the same will, it was held the words "in default of issue of my said daughter," import either a definite or indefinite failure of issue, either "a failure of issue of the daughter at her death, or an indefinite failure of issue" (p. 531). The phrase in question was long used interchangeably with "die without issue," or "leaving no issue," and before 1897 would have been held in law to mean an indefinite failure (Vaughan v. Dickes, 20 Pa. 509; Kay v. Scates, 37 Pa. 31; George v. Margan, 16 Pa. 95; Robinson's Est., 149 Pa. 418), but that interpretation, where such language appears, is no longer to be followed. Since that time it has been said the words in question mean "at the death" (Smith v. Piper, 231 Pa. 378), though the case just cited is to be differentiated from the one at bar, because of other provisions not appearing here. The word "or" as used in the clause "in the lifetime or at the death," appearing in the Act of 1897, and relied upon by appellant, is evidently intended as a conjunctive, and the failure of issue is to be determined as of the date when the first taker dies. The statutory rule is applicable, and the daughter took an interest for life only, as heretofore held, though a child has been born to her.

It is further urged that if Mrs. Craig had but a life estate, her power of appointment could be exercised, a son being now existent, and the realty converted by her into cash, the proceeds to be held in lieu thereof for the benefit of all interested. She has, under the will, the right to choose among the class designated by testator (Lewis's Est., 269 Pa. 379; Rafferty's Est., 281 Pa. 325), and, in default of selection, the members of it would take (Johnson's Est., 276 Pa. 291), but it is not contended that there could be any appointment to Whitcomb, the vendee, so as to make permissible a deed to him. Under the will, the trustee named, or a substitute, could have sold the real estate devised, and held the proceeds in trust, but no such person was acting here. If, as we hold, Mrs. Craig had but a life estate, she could not, of her own volition, convey the fee.

The agreement of sale provided for approval by the court, and to it an application was made, though it is claimed no consent was legally required, on the theory that she was the absolute owner of the estate. If the owner of the fee, then, it is said, a judicial decree was unnecessary, since the provision in the contract was inserted for the benefit of the vendee, and by him could be waived. Doubtless this is so, and Whitcomb might accept and pay for whatever Mr. and Mrs. Craig could legally convey (Medoff v. Vandersaal, 271 Pa. 169), but he would acquire nothing more than her life interest, unless the conversion was accomplished as legally permitted.

The jurisdiction of the orphans' court, here invoked, extends to "the disposition of the title to real estate of decedents and of persons disabled from dealing therewith, in order to render the same freely alienable and productive to the living owners thereof" (Act June 7, 1917, P. L. 363, section 9g), a new clause introduced to cover the provisions of the Revised Price Act (Report of Commissioners, p. 402). By the terms of the latter statute, the life tenant may ask for the sale of realty,

and if the court finds it to be to the advantage of the estate, an order may be granted, the proceeds received being substituted for the benefit of those entitled to share in the income from the land. As similarly provided in the Fiduciaries Act of 1917 (June 7, P. L. 447), it may also authorize a private sale, if a better price can thus be obtained. In such case, any party interested (including an intending purchaser) may appear and object on the ground of insufficiency of consideration, and offer to pay more, "and the court, at its discretion, may thereupon authorize or direct such sale, refuse to authorize the same, or accept any substantially increased offer......or such party interested or legatee may appear as aforesaid and object to such sale on any legal or equitable grounds": Revised Price Act June 7, 1917, P. L. 388, section 20.

In the present case, a much larger sum was offered than that proposed to be given by Whitcomb, and the court refused to accept the bid of the latter, since it was manifestly not to the interest of the minor, and those in posse, represented by the appointed trustee. Complaint is made that the second tender was considered, since made by a tenant of the proposed vendee, and the doctrine that the title of the landlord cannot be impeached by the one holding possession under him is invoked. This rule can have no application here where the sole question is whether the sale is for the best interests of the estate, and the price offered by the purchaser at the private sale is the best obtainable, which plainly it is not. What the respective rights of the landlord and tenant would be, if the latter acquired title, does not concern us in this proceeding. It was the duty of the court to see that the interests of the estate were conserved, and the best price obtained, even if formal objections were not made by those having rights in the proceeds: Orr's Est., 283 Pa. 476.

We cannot say any abuse of discretion appears in refusing to grant the prayer of the petition. On the con-

trary, we are convinced that the application was properly denied.

The decree of the court below is affirmed at the cost of appellant.