## Levy's Estate

Before Van Dusen, Stearne, Sinkler, Klein, and Bok, JJ.

*Roy Martin Boyd*, for petitioner.

*R. Sturgis Ingersoll*, for trustee.

*Clarence K. Gundaker*, for trustee ad litem.

KLEIN, J., December 31, 1936.—In November 1935 the trustee entered into an agreement to sell 1500 shares of common stock of the Pennsylvania Range Boiler Company for $35,000. These shares represented the entire capital stock of the company. The agreement also provided for the purchase from the estate of the real estate upon which the company's plant is situated for $45,000. It also stipulated that a debt of $75,000 due by the corporation to the estate be amortized over a period of 10 years.

On November 15, 1935, the life tenant filed a petition with this court alleging that the sale price was inadequate and asked for an order to restrain the trustee from consummating the sale. Answers were filed by the trustee and the proposed purchaser, and the entire matter was referred to a master. In the course of the proceedings before the master an undisclosed purchaser, through counsel, made an offer of $39,000 for the stock, conditioned upon an examination of the company's books.

After holding many hearings and taking extensive testimony, the master recommended that the sale be restrained because of inadequacy of price. Upon exceptions to the master's report the matter was argued before the court en banc. At the time of the argument the purchaser indicated that he would raise his offer to $39,000.

An opinion was filed by Judge Stearne on May 19, 1936, dismissing the exceptions and approving the master's report, relying upon Orr's Estate, 283 Pa. 476 (1925), McCullough's Estate, 292 Pa. 177 (1928), and Hays' Estate, 286 Pa. 520 (1926). The opinion directed the trustee "to reopen negotiations for the sale of this stock, at a price of $39,000 or better, in order to obtain the highest available price therefor." [26 D. & C. 473.]

The trustee thereupon commenced negotiations anew. Counsel representing the undisclosed purchaser who made the offer of $39,000 refused to raise his offer but indicated that he might if anyone else met the bid. He persisted in his refusal to disclose the name of his client and insisted upon an examination of the books.

On May 29, 1936, 10 days after Judge Stearne's opinion was filed, the trustee sold the stock outright to the original purchaser for $39,000 cash. The entire transaction, including the acceptance of the purchase money and the delivery of the stock, was consummated on this date. The other terms of the original agreement remained unchanged.

Thereupon, on June 3, 1936, the life tenant filed a second petition with the court alleging that the sale was fraudulently made and asking that it be set aside. Answers were filed and the matter again referred to the master.

After the sale was consummated and while the proceedings were pending before the master the second time, counsel for the undisclosed bidder raised his offer to $42,000. The master, after a full hearing, found that the allegation of fraud had not been proved, and recommended that the petition be dismissed.

We see no error in this conclusion. If the sale had not been consummated, it might have been restrained under authority of Orr's Estate, supra, and the other cases in which the principles set forth therein have been affirmed. But in the absence of fraud we will not set aside a sale which has been actually consummated. In McCullough's Estate, supra, a sale of real estate was restrained, but Justice Walling, who delivered the opinion of the court, said, at page 181:

"The instant case presents not a completed transaction but merely an agreement to purchase . . . The legal title had not passed. Had the consideration been paid or secured and deed delivered, a different question would be presented."

The trustee in the present case was in a most difficult position. It was charged with the responsibility of managing and disposing of a manufacturing business in a highly competitive field. In addition to the ordinary problems of a going manufacturing business, it was confronted with many other perplexing problems due to the disquiet-

ing political and economic situation in the entire country. New legislation affecting labor, taxation, and general business conditions made decisions concerning the future of industry uncertain and hazardous guesses. We therefore cannot find fault with the trustee's desire to dispose of the business quickly.

In addition to disposing of the stock the trustee was concerned with the sale of the real estate and the recovery of the $75,000 from the corporation. There is no suggestion that the price secured for the real estate was inadequate; and there is no proof that the sale, as consummated, was not a proper exercise of discretion to better assure the repayment of the $75,000. When the entire transaction is viewed as a whole, the offer of an additional $3000 for the stock does not of itself render the accepted price inadequate nor the sale fraudulent.

The first offer of $39,000 was conditional and on behalf of an undisclosed principal. The offer which was accepted was unconditional and the identity of the purchaser was known. The disclosure of the name of the purchaser was an important factor in the sale. It enabled the trustee, in the exercise of its discretion, to determine the probable ability of the corporation, under the management of the purchaser, to comply with the other terms of the agreement. Furthermore, since the one offer was conditional, failure of the trustee to accept the definite offer of the customer, who was ready, willing and able to buy, might have resulted in the loss of all customers to the detriment of the trust estate.

In conclusion, it is interesting to note that, in the instant case, the petitioning life tenant, who is bitterly contesting the sale of the stock, attempted to purchase it herself in 1935. Her offer, which was declined by the trustee, was less attractive than the one which she now denounces as fraudulent.

No fraud having been proved, and the trustee being a responsible corporation, we are of opinion that the rights

of petitioner can be fully protected at the audit of the trustee's account if she can establish that the trustee, upon exercise of good business judgment, could have effected a more advantageous sale.

The exceptions are all dismissed. We have this day approved the decree recommended by the master.

VAN DUSEN, J., concurring—I concur in the conclusion that there has been no proof of fraudulent combination between the trustee and the purchaser which would justify setting aside the consummated sale. I do not think any opinion should be expressed as to the adequacy of the price as that is a matter which should come up at the trustee's account.